(No. 66432.—

WILLIAM L. KLASKIN, Adm'r of the Estate of Virgil Robert Woodruff, Deceased, Appellant, v. RALLA KLEPAK, Appellee.

*Opinion filed February 2, 1989.*

STAMOS and CALVO, JJ., took no part.

Lawrence M. Karlin, of Katz, Randall & Weinberg, of Chicago, for appellant.

Wayne B. Giampietro and James M. Pietz, of Chicago (Witwer, Burlage, Poltrock & Giampietro, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

William L. Klaskin, administrator of the estate of Virgil Robert Woodruff, brought a citation proceeding against Ralla Klepak to recover title to a condominium unit which the decedent held in a land trust at the time of his death. The land trust agreement specified that the decedent's beneficial interest in the trust would pass to Klepak at the time of his death. The administrator alleged that Klepak acted as the decedent's attorney when he purchased the condominium unit and established the land trust, and that she acquired an interest as successor beneficiary of the land trust by exerting undue influence over the decedent. The circuit court, following a four-day bench trial, held in the estate's favor. The circuit court concluded that Klepak and Woodruff maintained an attorney-client relationship at the time the land trust was established and that Klepak failed to present clear and convincing evidence to rebut the presumption of undue influence which arises when an attorney benefits from a transaction with a client during the existence of such a

relationship. The appellate court, with one judge dissenting, reversed, holding that the circuit court's decision was contrary to the manifest weight of the evidence. Although the appellate court agreed that an attorney-client relationship existed, the court concluded that Klepak had produced sufficient evidence to rebut the presumption of undue influence. (164 Ill. App. 3d 791.) We allowed the administrator's petition for leave to appeal from the appellate court's judgment (107 Ill. 2d R. 315).

Because the appellate court held that the trial court's judgment was contrary to the manifest weight of the evidence, the facts and evidence adduced at trial must be discussed in detail. The decedent, Woodruff, died on May 29, 1984, at the age of 54. He was a bachelor, had never married and had no living issue. His only heirs were two maternal aunts and one paternal cousin. At the time of his death, the decedent resided in a condominium unit in the John Hancock Building in Chicago, which he had purchased in October 1973, approximately 11 years before his death. Title to the condominium unit was held by Upper Avenue National Bank (the bank) as trustee under a land trust agreement identified as trust No. 10214. (The name of the trustee bank was subsequently changed from Upper Avenue National Bank to the Lake Shore Bank.) The trust agreement provided that the beneficial interest in the real estate would remain in Woodruff for life and then pass to Ralla Klepak upon his death, or to Woodruff's estate if Klepak predeceased him. Klepak took possession of the condominium shortly after Woodruff's death and has had sole use and possession of the premises since that time.

Klepak, an attorney, met Woodruff in 1966 when she represented him in a criminal misdemeanor proceeding. Although their relationship began as attorney and client, it developed into one of friendship. They dined, attended operas and vacationed together. Klepak testified that she

and Woodruff socialized about once a month until three years before Woodruff's death.

Prior to his death, Woodruff retained Klepak in her capacity as an attorney to represent his interest in various legal and personal matters. Klepak testified that she incorporated Woodruff's business in 1977 and prepared a quitclaim deed transferring certain Texas real estate from Woodruff to his cousin in 1983. The evidence also suggests that Klepak represented Woodruff in a proceeding against his former landlord in 1969.

Klepak denied, however, that she and Woodruff maintained an attorney-client relationship in October 1973, when Woodruff purchased the condominium unit. She claimed that she told Woodruff that she could not represent him in that matter because she was unqualified in real estate law. She testified that she referred Woodruff to Ralph Goren, the attorney who represented Woodruff at the closing.

Klepak's unequivocal denial that she represented Woodruff when he purchased the condominium must be evaluated in light of the evidence adduced at trial to prove that an attorney-client relationship existed. The chronology of events relating to Woodruff's purchase of the condominium is well documented by correspondence and mortgage and closing documents.

On July 23, 1973, Woodruff signed an application to purchase the condominium unit which he was then leasing in the John Hancock Building, made a $1,000 earnest money deposit with the seller, and applied for a mortgage at Upper Avenue National Bank. In the mortgage application Woodruff indicated that Klepak was his attorney.

Klepak reviewed the purchase contract for the condominium at Woodruff's request and advised him to purchase the condominium. At trial, Klepak produced a copy of the purchase contract signed by Woodruff from a file

she maintained for services she rendered to Woodruff. Woodruff deposited the balance of earnest money required by the contract on August 16, 1973. On August 28, 1973, Klepak wrote the first of a series of letters regarding the land trust into which title to the condominium was transferred. In this letter, she advised the bank "that my client, Mr. Woodruff, will take title to the above referenced land trust with your bank as trustee." In this letter, Klepak made specific reference to the number of the yet-to-be-formed land trust and requested the forms needed to set up the trust. The bank sent the requested documents to Klepak on August 30.

On September 4, 1973, the seller sent Woodruff an executed copy of the purchase contract for the condominium unit. Klepak produced this executed purchase contract at trial from the file she maintained. On September 5, the bank sent Klepak the mortgage documents used in connection with the condominium purchase. On September 10, 1973, Klepak wrote a letter to the bank, stating that she found the documents in order and would "request that my client execute the same." That same day, she sent the mortgage documents to Woodruff, advising him to sign the "documents which have been prepared by the bank and which I have reviewed." She also enclosed a title company judgment affidavit for his signature with instructions for completion of the affidavit.

On September 26, 1973, the seller's attorneys wrote a letter to Klepak which described the procedure to be followed at the closing. In the letter, the attorneys stated that they were informed that Klepak represented Woodruff, that Woodruff asked the sellers to communicate with him through Klepak and to forward all documents to her. Klepak did not respond to the letter or indicate that she did not represent Woodruff.

On October 5, a $2,130.04 check from the "Ralla Klepak Client's Funds Account" was deposited in the clos-

ing escrow at Chicago Title and Trust. Klepak admitted at trial that she loaned Woodruff money for the down payment on the condominium from her client's funds account and that no funds in that account belonged to Woodruff at the time she issued the check.

The bank sent Klepak the original executed trust agreement on October 9, 1973, and requested that she return an executed and recorded deed into trust to the bank. Klepak notarized the deed into trust, dated October 10. The trustee's deed, the trust deed and the deed into trust were recorded on October 15. After the closing, Klepak mailed Woodruff the closing statement and the recorded trustee's deed. The bank mailed mortgage documents and an appraisal to Klepak on December 10, and requested a $150 document preparation fee. Klepak wrote two letters to the bank objecting to the fee. Both of these letters referred to Woodruff as her client.

Two days after Woodruff's death, Klepak delivered a certified copy of his death certificate to the bank. She presented Robert Skowronski, a trust officer at the bank, with a general direction asking the trustee to provide her with a copy of the trust agreement and a memorialization that she was the sole surviving beneficiary of the trust.

Skowronski testified at trial that he had a conversation with Klepak while the documents she requested were being prepared. Klepak informed him that she was "a very good friend of Woody's," and had given Woodruff money for the down payment on the condominium. Klepak told Skowronski that "she didn't want the money back, but instead, he was going to name her beneficiary." Klepak told Skowronski that she was shocked to learn that Woodruff wanted her to be the beneficiary of the land trust, but that he "insisted on her being the beneficiary, so she had the documents prepared that way."

At the trial, Klepak admitted that she had a conversation with Skowronski at the bank on May 31, 1984. She did not deny or rebut Skowronski's testimony regarding the substance of the conversation. Klepak repeatedly denied, however, that she represented Woodruff with regard to the purchase of the condominium or establishment of the trust. She stated that she first learned that Woodruff had named her beneficiary of the trust after he closed on the purchase of the condominium. She claimed that she never saw the trust documents until October 1973, when Woodruff asked her to notarize the deed into trust while they were dining together. She admitted reviewing the purchase contract for the condominium and drafting a letter to the bank requesting documents to establish the land trust. She could not recall how she knew the land trust number which she referred to in the letter. She also admitted drafting letters to Woodruff instructing him how to fill out the title company application and to the bank objecting to the document preparation fee. She testified that she wrote the letters as a personal favor to Woodruff, in her capacity as a friend, and not as Woodruff's attorney. She admitted that she did not pay Woodruff any consideration in exchange for being named beneficiary to the land trust and that she did not suggest that Woodruff seek the advice of another attorney after learning that she was named as the beneficiary.

Ralph Goren testified that he represented Woodruff in connection with his purchase of the condominium unit at the John Hancock Building. The witness testified that he had not retained any of the closing documents and had destroyed his file. He assumed that he attended the closing because his name appeared on the closing statement but had no independent recollection of any conversations with the decedent. On cross-examination, Goren stated that he recalled that Woodruff took title to the

condominium in his own name at the closing. He had no knowledge of the land trust and did not discuss such a trust with Woodruff.

Sylvia DeJesus, a friend of Klepak, testified that Klepak introduced her to Woodruff in the late 1960s. She became friends with both Woodruff and Klepak. DeJesus testified that her relationship with Klepak was strictly social. She stated that Klepak had represented her parents in a real estate closing in 1979, but had never represented DeJesus in any legal matters. On cross-examination, however, DeJesus admitted that Klepak represented her in a divorce. She stated that the divorce proceeding lasted many years, but could not remember the year the divorce was filed or granted.

DeJesus testified that in October 1973, she met Woodruff and Klepak at a restaurant in a Chicago hotel. She testified that Woodruff gave Klepak a document to notarize while they were at the restaurant. After Klepak saw the document, she began to cry and appeared to be very touched. DeJesus heard Klepak say to Woodruff, "Why don't you leave this condominium to your aunt or your family or your friends." She testified that Klepak notarized the document at dinner. She believed that Klepak had a notary seal in her purse, but could not remember how many documents Woodruff gave Klepak or the color or size of the documents.

William Klaskin, the administrator of Woodruff's estate, testified that in November 1983, Woodruff showed him an envelope on a blotter in the library of Woodruff's condominium. Woodruff instructed Klaskin to open the letter if anything ever happened to him. A day or two after Woodruff's death, Klaskin found an envelope on the blotter in the library and opened it. The envelope contained a letter with two separate entries by Woodruff. The first entry, dated November 11, 1980, and signed by Woodruff, stated:

"In the event of my physical death or illness, Mr. William L. Klaskin should be in full charge of my estate. Included are funds at Upper Avenue Bank, Chicago, invested in 90-day periods, apartment 5024 of this building which is in trust at the same bank and my other earthly possessions in my home. He alone may make proper disbursement to others I care for and who need financial aid."

The second entry, dated December 6, 1983, stated:

"Prior to a trip to Switzerland, Egypt and England. The name of the bank has changed to Lake Shore Bank. My principal possessions are now in this apartment condominium and the mortgage on this home is held in trust, as indicated above, at Lake Shore downstairs. Mr. Klaskin *** is to be left fully in charge of my remaining earthly affairs ***."

The trial court, after reviewing the evidence outlined above, entered a judgment in favor of Woodruff's estate and ordered Klepak to assign her beneficial interest in the land trust to the estate. The trial court held that Klepak and Woodruff maintained an attorney-client relationship at the time Woodruff purchased the condominium despite the fact that another attorney was physically present at the closing. Klepak does not challenge in this appeal the trial court's conclusion that an attorney-client relationship existed.

Transactions between attorneys and clients are closely scrutinized. When an attorney engages in a transaction with a client and is benefited thereby, a presumption arises that the transaction proceeded from undue influence. (*McFail v. Braden* (1960), 19 Ill. 2d 108.) Once a presumption is raised, the burden shifts to the attorney to come forward with evidence that the transaction was fair, equitable and just and that the benefit did not proceed from undue influence. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452.) Because a strong presumption of undue influence arises when an attorney engages in a transaction with a client

and is benefited thereby (*McFail v. Braden* (1960), 19 Ill. 2d 108), courts require clear and convincing evidence to rebut this presumption (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452). Some of the factors which this court deems persuasive in determining whether the presumption of undue influence has been overcome include a showing by the attorney (1) that he or she made a full and frank disclosure of all relevant information; (2) that adequate consideration was given; and (3) that the client had independent advice before completing the transaction. *McFail v. Braden* (1960), 19 Ill. 2d 108, 118.

In this case, the trial court evaluated the evidence adduced at trial in light of the factors enumerated in *McFail* and concluded that Klepak failed to overcome the presumption of undue influence. The trial court held that Klepak never informed Woodruff of the legal consequences of naming her as beneficiary. The court also concluded that Klepak gave no consideration for being named as beneficiary and never advised Woodruff to seek independent legal advice after learning that she was named as beneficiary. Accordingly, the trial court concluded that Klepak had failed to present clear and convincing evidence to overcome the presumption of undue influence.

The appellate court reversed, the majority holding that the trial court's finding that the presumption of undue influence had not been overcome was contrary to the manifest weight of the evidence. The appellate court, however, did not discuss the *McFail* factors or the cases applying those factors. Instead the court stated that Klepak had produced evidence that Woodruff was only 54 years old when he died, was not enfeebled by age or health and had managed his own affairs prior to and during the period in which the land trust was established. The court also stated that Klepak had produced

evidence that she and Woodruff shared a close relationship for 17 years; that it was Woodruff's expressed intent to give her the trust *res* as contingent beneficiary; and that the trust was in existence for 11 years prior to Woodruff's death. The appellate court held that the evidence Klepak produced regarding her relationship with Woodruff and his state of mind when he named her beneficiary, coupled with evidence that Woodruff never modified the trust after it was executed, was sufficient to rebut the presumption of undue influence. The court concluded that the trial court's finding that the presumption was not overcome was contrary to the manifest weight of the evidence. In this appeal Woodruff's estate argues that the appellate court erred in holding that the circuit court's judgment was contrary to the manifest weight of the evidence.

As stated, a strong presumption of undue influence arises when an attorney engages in a transaction with a client under which the attorney benefits. This court recently explained the procedural effect of such a presumption in *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452. In *Franciscan Sisters*, this court stated that the rebuttable presumption of undue influence has the effect of requiring the party against whom it operates to come forward with evidence to meet the presumption. Where the presumption is particularly strong, as when an attorney benefits from a transaction with a client, that party must produce clear and convincing evidence to rebut this presumption. Once a party comes forward with sufficient evidence, the presumption vanishes, and the opposing party must persuade the trier of fact that the transaction proceeded from undue influence. *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 462-64.

Klepak did produce some evidence to rebut the presumption of undue influence. The trial court simply held

that the evidence was not sufficient to overcome the strong presumption of undue influence. The only issue raised in this appeal is whether the trial court's finding on this matter was contrary to the manifest weight of the evidence. In addressing this issue, it should be considered that it is the obligation of the trial court, when sitting without a jury, to weigh the evidence and decide disputed questions of fact. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120.) It is clear that the appellate court must defer to the findings of the trial court unless they are clearly contrary to the manifest weight of the evidence. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120.) After reviewing the record, we cannot agree with the appellate court's holding that the trial court's judgment was contrary to the manifest weight of the evidence. The record contains ample support for the trial court's conclusion that Klepak failed to rebut the presumption of undue influence by clear and convincing evidence.

The facts here differ from those in *Franciscan Sisters*, where this court held that the presumption of undue influence was overcome. There, the attorney who drafted the decedent's will arranged for a disinterested attorney to question the decedent to determine whether she understood and intended for her attorney to receive a substantial gift under her will. The evidence in this case established that Woodruff did not have independent legal advice before executing the land trust. Klepak admitted at trial that she never urged Woodruff to secure independent legal advice after learning that he intended to name her beneficiary of the land trust. Although Klepak argues that Ralph Goren, the attorney who attended the closing, gave Woodruff independent advice, Goren testified at trial that he had no knowledge of the land trust and did not discuss such a trust with Woodruff. Accordingly, he could not have advised Woodruff of the le-

gal consequences of naming Klepak as beneficiary of the trust.

We recognize that an attorney who fails to advise a client to seek the advice of independent counsel may rebut the presumption of undue influence in other ways. (*In re Schuyler* (1982), 91 Ill. 2d 6.) In this case, however, the evidence Klepak introduced failed to convincingly show that Woodruff fully understood and intended the consequences of naming her beneficiary of the trust. As the estate argues, she did not advise him that the property would not be part of his probate estate or that, as beneficiary, she would be under no legal obligation to retire his debts with equity in the condominium.

To excuse her failure to inform Woodruff of the nature and effect of the trust agreement, Klepak argues that Woodruff was a young, intelligent, business entrepreneur at the time he executed the trust. She asserts, without evidence, that he "obviously read and understood the plain meaning of the trust agreement." The appellate court also relied upon evidence that Woodruff was not "enfeebled by age or health" in concluding that Klepak had overcome the presumption of undue influence.

That Woodruff was mentally alert at the time he executed the trust, however, does not necessarily prove that he understood the nature and effect of the trust agreement. The trial court may have reasonably concluded that Woodruff, while a successful entrepreneur, had little aptitude or interest in administering his business and personal affairs. As the estate argues, the evidence introduced at trial suggests that Woodruff was highly dependent upon others for advice and guidance, and placed unquestioned trust in the professionals he hired to manage his affairs. For example, Woodruff's accountant, Richard Plank, testified that he prepared Woodruff's tax returns for 14 years. He testified that Woodruff would

simply give him an envelope stuffed with receipts, sign a blank tax return and a blank check, and ask the accountant to insert the appropriate amount of tax he was required to pay.

The evidence suggested that Woodruff reposed a similar trust in Klepak, and depended upon her advice in making personal and business decisions. Klepak testified that Woodruff often sent her documents and memoranda regarding his business and personal affairs for her review. Most of these documents, she admitted, did not relate to matters in which she represented him. Klepak also admitted that Woodruff sought her professional advice before purchasing the condominium, and that he decided to purchase the condominium only after she advised him to do so. The trial court may have reasonably concluded that the evidence which Klepak introduced to show that Woodruff was an astute advertising executive did not necessarily prove that he understood the effect of the trust agreement, particularly in light of other evidence which established that Klepak was in a unique position to persuade Woodruff to make a disposition of his property which he would not otherwise have made.

Klepak argues that the testimony of her friend, Sylvia DeJesus, independently established that Woodruff understood the terms of the trust agreement and intended for Klepak to receive the condominium upon his death. The appellate court similarly relied upon DeJesus' testimony in concluding that the presumption of undue influence had been overcome. It was the trial court, however, that saw this witness and heard her testimony. The trial court was therefore in the best position to determine the credibility of this witness and the weight to be given her testimony, in determining whether the presumption of undue influence had been overcome. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302.) The trial court contrasted DeJesus' testimony that

Woodruff knew his condominium would pass to Klepak under the trust upon his death with the provisions of Woodruff's informal "will," which indicated that Woodruff believed that his condominium was part of his estate even after executing the trust agreement. In the informal will, Woodruff directed Klaskin to take charge of his entire estate, including his condominium, upon his death. That document suggested that Woodruff did not understand the effect of the trust agreement and did not know that the condominium was excluded from his estate, and would automatically pass to Klepak upon his death under the terms of the trust. After weighing the conflicting evidence, the trial court concluded that DeJesus' testimony was not sufficient to rebut the presumption of undue influence. The fact that the appellate court may have reached a different conclusion after evaluating the conflicting evidence does not justify a reversal of the trial court.

Klepak claims that the trial court erred in admitting the informal will into evidence. She argues that this document, which Woodruff executed several years after establishing the trust, was not a valid testamentary instrument and was not probative of his state of mind at the time he executed the trust. At most, she argues, the letter indicated that Woodruff changed his mind after naming her beneficiary of the trust. As the estate argues, however, the trial court did not admit the informal will as evidence of Woodruff's testamentary intent. Rather, the court admitted the document for its relevance on the question of whether Woodruff possessed the proper donative intent at the time he named Klepak as beneficiary of the land trust. (*In re Estate of Denler* (1980), 80 Ill. App. 3d 1080.) The informal will suggested that, after executing the trust agreement, Woodruff continued to believe that the condominium was part of his estate and did not know that it would automatically pass to Klepak,

rather than his estate, upon his death. The informal will was admissible for the purpose of establishing that Woodruff never understood the nature and effect of the trust agreement and, therefore, could not have possessed the proper donative intent at the time he established the trust.

Klepak also introduced evidence that Woodruff had the absolute right and every opportunity to change the named beneficiary of the trust. The appellate court concluded that the 11-year period between the execution of the trust and Woodruff's death, without any revision of the trust, established that Woodruff intended to make Klepak the beneficiary. The evidence did not show, however, that Woodruff was aware of his right to change the beneficiary or of the need to do so. Moreover, this court has held that evidence that a client had the power to change the beneficiary is insufficient to rebut the presumption of undue influence. (*In re Anderson* (1972), 52 Ill. 2d 202.) In *Anderson*, this court disciplined an attorney who acquired an interest as the surviving beneficiary of his deceased client's land trust. There, as here, the attorney and client shared a close, personal relationship, which the attorney described as "sister-like." Unlike the case here, the decedent in *Anderson* had prior experience with land trusts and understood the nature of a trust agreement. The *Anderson* court evaluated the evidence in light of the factors enumerated in *McFail* and concluded that the attorney failed to rebut the presumption of undue influence. Although the attorney had informed the client that "she remained in full control" and could change the beneficiary of the land trust at any time, the *Anderson* court concluded that he had not made a sufficient disclosure of all the relevant facts. (*In re Anderson* (1972), 52 Ill. 2d 202.) The information Klepak gave Woodruff was far less than that found insufficient in *Anderson*.

Klepak next argues that the evidence at trial clearly established that she did not participate in the purchase of the condominium or prepare the trust documents. She argues that it is unjust to require her to affirmatively show that she made a full and frank disclosure of all the relevant facts when she did not know that she was named beneficiary of the trust until the "deal was completed."

We consider that the evidence irrefutably established that Klepak, whether acting only as a friend or as an attorney, provided legal services to Woodruff relating to his purchase of the condominium. Klepak admitted, when confronted with evidence, that she reviewed the purchase agreement, advised Woodruff regarding that contract, reviewed loan documents, corresponded with Woodruff's lender regarding documents to establish the land trust and fees, and sent copies of closing and loan documents to Woodruff with instructions on how to complete those documents. She also admitted that she held herself out as Woodruff's attorney to third parties. The record suggests that Klepak did everything that an attorney who represents a client in a real estate transaction would typically do, except attend the closing.

Although Klepak claimed that she never saw the trust documents until Woodruff asked her to notarize them over dinner, she could not explain how she knew the trust number before the trust was executed or what became of the trust documents which the bank sent to her upon her request. The trial court concluded that Klepak's unequivocal denial that she prepared the trust documents was directly refuted by Robert Skowronski's unrebutted testimony that Klepak told him that Woodruff insisted on naming her as beneficiary, so "she had the documents prepared that way." Where several inferences may be drawn from conflicting evidence, the reviewing court must accept that which supports the trial court's

decision. (*Kelley v. First State Bank* (1980), 81 Ill. App. 3d 402.) Here, the evidence in the record supports the trial court's conclusion that Klepak did participate in the establishment of the land trust and therefore had ample opportunity to advise Woodruff of the consequences of naming her beneficiary or to urge him to seek independent advice.

Klepak lastly suggests that the ethical duties set out in *McFail* do not apply in a situation like this, where a client bestows a gift upon a close friend who happens to be an attorney. This court, however, has not relieved attorneys of their fiduciary duty to make a full and frank disclosure to clients simply because the attorney has a close, personal relationship with the client. In *In re Saladino* (1978), 71 Ill. 2d 263, this court disciplined an attorney who took title to his client's real estate in his own name and who made himself the sole legatee of the client's will, without making a full and frank disclosure or advising his client to seek independent advice. There, as here, the evidence established that the attorney and client were close friends. The attorney visited the client in the hospital and did not charge her a fee for his services. The attorney testified that he was holding title to the client's property as an "informal trustee," because Wisconsin did not recognize land trusts, and because he was concerned that the acquisition of real estate might jeopardize the client's eligibility for governmental assistance. Unlike this case, the attorney transferred title back to the client upon her demand.

In disciplining the attorney, the *Saladino* court stated that it did not wish to discourage attorneys from developing close relationships with clients. It recognized that clients sometimes rely upon their attorneys for more than simply giving of legal counsel. The court stated, however, that an attorney who maintains a close advisory relationship with a client has a duty not to abuse

that relationship and an obligation to avoid even the appearance of impropriety. (*In re Saladino* (1978), 71 Ill. 2d 263.) Although *Saladino* arose in the context of a disciplinary proceeding, it demonstrates how closely courts scrutinize transactions between attorneys and clients even when, as here, the evidence suggests that the parties maintained a close, personal relationship at the time of the challenged transaction. See also *In re Anderson* (1972), 52 Ill. 2d 202.

The estate concedes that Woodruff and Klepak had a close relationship and that Woodruff, a bachelor, with only collateral relations, may have wanted Klepak to receive part of his estate upon his death. An attorney who deals with a client, however, must comply with at least minimal standards of professional conduct. Klepak had the obligation to come forward with clear and convincing evidence that the beneficial interest she acquired in Woodruff's estate was not the product of undue influence. The trial court's finding that Klepak failed to produce sufficient evidence to overcome the presumption of undue influence was not contrary to the manifest weight of the evidence.

For the reasons given, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.