DEAN A. MONCO *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. RONALD JANUS *et al.*, Defendants-Appellees and Cross-Appellants (Hamman and Benn *et al.*, Appellees and Cross-Appellants).

First District (1st Division) No. 1—90—0670

Opinion filed October 21, 1991.—Modified on denial of rehearing December 23, 1991.

Schuyler, Roche & Zwirner, of Chicago (Paul E. Lehner, of counsel), for appellants.

Hamman & Benn, of Chicago (Dawn M. Cassie, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

In February 1987, plaintiff Dean Monco (Monco) petitioned to dissolve on the grounds of deadlock JI-SCO-NI Enterprises, Inc. (Jisconi), an Illinois corporation, owned 50% each by Monco and defendant Ronald Janus (Janus). Jisconi's sole asset is its ownership of patent rights to an invention which Monco and Janus had assigned to Jisconi. Janus counterclaimed against Monco seeking to vacate the assignment and to compel Monco to turn over the Jisconi shares he owned on the grounds that the invention was Janus' idea, that Monco was Janus' personal attorney, and that the assignment and Monco's stock ownership in Jisconi were the result of Monco's undue influence and breach of fiduciary duty to Janus. Monco responded in part to the counterclaim with a motion for sanctions pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—

611) against Janus and his attorneys. In this motion, Monco alleged that Janus' counterclaim contained false allegations of fact, that Janus' counsel failed to investigate these facts before filing, and that Janus' counsel improperly threatened disciplinary proceedings against Monco to force Monco to settle the case.

On October 4, 1989, the circuit court of Cook County dismissed Janus' counterclaim holding that, while an attorney-client relationship existed and a breach of fiduciary duty had occurred, Janus knowingly ratified his dealings with Monco. Thereafter, the court denied Monco's motion for sanctions.

Monco appeals from the circuit court's denial of his motion for sanctions. Janus cross-appeals from the dismissal of his counterclaim and from the denial by the circuit court of leave to file three affidavits which Janus tendered during the hearing on Monco's motion for sanctions. For the reasons that follow, we affirm the denial of sanctions and reverse the dismissal of Janus' counterclaim.

The facts of this case defy succinct summary. The record shows that Janus is a college graduate, a certified teacher, and the sole proprietor of his own landscaping business for over 17 years. Monco is an attorney admitted to practice in Illinois and before the United States Patent and Trademark Office. Monco is also a shareholder in a Chicago law firm.

Prior to the transaction in question, Janus and Monco had been social acquaintances since 1970. In 1981 and 1984, Janus contacted Monco to discuss possible patentable ideas. These ideas were not pursued. In the spring of 1985, Monco engaged Janus to perform landscaping services for his home. On Memorial Day weekend, while performing such services, Janus sat down with Monco at Monco's kitchen table and drew a sketch of an idea for a beverage container to be worn around the neck of the user. The content of the conversation which next transpired is disputed by the parties, and nothing in writing exists to verify either party's version of the agreement.

Janus testified that after Monco told him that his idea was fantastic, Janus asked Monco if he was interested in pursuing the idea together. Janus told Monco that Monco could help him with the idea and share in any profits. Janus testified that he and Monco agreed to share expenses equally and that Monco would provide business contacts and free legal services to the venture. Janus denied that Monco told him to obtain independent legal advice and denied that he and Monco were "50/50" partners.

Monco testified that Janus specifically asked him to go into business and offered Monco a 50% interest in the venture. Monco ac-

cepted Janus' offer and the two shook hands. Monco testified they discussed various matters, including licensing the patent to a manufacturing concern, from which they would receive royalties, versus assigning the patent to a separate corporation owned by them equally, which would avoid personal liability but would require business capital and marketing. Monco testified that he specifically advised Janus to obtain outside counsel to make sure that Janus' interests were represented. Janus agreed. Monco's wife, who was present for much of the conversation, corroborated Monco's testimony.

Significantly, at the kitchen table meeting, or any time thereafter, Monco admitted that he never advised Janus that if Janus were to assign the patent to a jointly owned corporation, Janus would lose exclusive control over the patent in the event of corporate dissolution. In such situation, Janus and Monco as co-owners of the patent would have equal rights to market the patent without accounting to the other for profits. Monco also testified that he did not inform Janus of the option of licensing the patent to Jisconi as opposed to a full assignment. Monco explained that Janus was not his client and that anything less than a full assignment to a jointly owned company would be inconsistent with their agreement to be "50/50" partners.

In the summer months following the "kitchen table" meeting, Janus and Monco communicated by telephone and letter and exchanged ideas on numerous matters involving the beverage container, including what entity would be best for liability and tax purposes. Ultimately, the parties agreed to incorporate and name the entity using the first names of their children. Monco also suggested and conducted a "prior art" search to determine if Janus' idea was patentable. Based on the results of this search, Monco concluded and Janus agreed that a patent application was appropriate.

On September 19, 1985, Janus and Monco met with Mark Fine, an attorney and friend of Monco, about incorporating Jisconi. Fine prepared draft articles of incorporation and testified that Monco and Janus told him that they were equal partners in the new business. Fine heard nothing during this conversation to indicate to him that Monco and Janus were anything other than business partners. Fine also testified that he advised Janus to obtain independent counsel to prepare a buy/sell and shareholders' agreement in order to protect Janus' interests. Janus' recollection about this meeting conflicted with Fine's. Janus denied ever discussing anything regarding specific ownership interests, and he could not remember Fine's advice to obtain independent counsel.

After the meeting with Fine, Janus asked Monco to prepare the incorporation papers. Monco was reluctant to prepare these papers because he did not practice corporate law. However, using Fine's draft, Monco prepared the papers and forwarded them to Janus for his review and signature. Janus admitted that Monco told him to have his own counsel review the papers but Janus never did. Janus testified that he considered Monco his attorney and thought that Monco would assure that Janus' interests were protected. Jisconi was incorporated on October 2, 1985.

Following the incorporation of Jisconi, Monco prepared the initial patent application for the beverage container. The application, related documents, and the assignment of the patent to Jisconi were forwarded to Janus for his review. Monco testified that he again told Janus to have his own counsel review the documents, but Janus denied ever receiving this advice. On October 28, 1985, without the aid of independent counsel, Janus executed the parent patent application and an initial assignment. Monco filed the parent patent application and related documents on November 12, 1985.

Monco later forwarded Janus an Internal Revenue Service Subchapter S election form showing Janus and Monco each owning 500 shares of Jisconi. Although Janus claimed that this was the first time he learned that he and Monco were equal owners of Jisconi, and although he disapproved, he signed the form in mid-November without expressing any objection to Monco. Janus explained that Monco was his attorney and he was just following Monco's instructions. Again, Janus did not have the aid of independent counsel before executing this document.

In February 1986, without Monco's knowledge, Janus began consultations with a patent attorney named George Dvorak, whom Janus learned about through a local bar reference. Janus saw Dvorak on several occasions throughout 1986 although the record is not entirely clear on what dates Dvorak was consulted or when their relationship ceased. During discovery and at trial, Janus asserted the attorney-client privilege regarding the content of his conversations with Dvorak.

In late February 1986, Monco prepared a draft of a second patent application, called a continuation-in-part (CIP) application, and gave it to Janus for his review. This application included patentable claims regarding the container having the capacity to hold a carbonated beverage and a specialized straw. Neither of these claims was included within the first application. Monco told Janus that because he had participated in the development of these new features, the patent laws required that he name himself as a co-inventor on the CIP appli-

cation. Although the record is not entirely clear on this point, Janus either consulted with Dvorak before signing the application or soon afterwards. In any event, Janus made no objection to the CIP application. On March 26, 1986, at Monco's office and in the absence of Janus' independent counsel, Janus and Monco executed the CIP application and a second assignment of all patent rights to Jisconi.[1]

On July 30, 1986, Monco wrote Janus and addressed several subjects, including a proposed shareholders' agreement which Monco had previously drafted and which addressed the disposition of Jisconi shares upon the occurrence of certain circumstances. In this letter, Monco also stated that, as he had told Janus on several occasions since forming Jisconi, Janus should obtain independent counsel to review the agreement as well as other matters connected with Jisconi. This was the first time in writing that Monco advised Janus to obtain independent counsel. Neither Janus nor Anthony Vaccarello, an attorney retained shortly thereafter by Janus, raised any concerns about the statements in the letter. Janus again invoked the attorney-client privilege regarding his communications with Vaccarello.

On August 5, 1986, Vaccarello wrote Monco and identified himself as Janus' counsel regarding the proposed shareholders' agreement. In this letter, Vaccarello requested certain corporate documents, including any pre-incorporation agreements, shareholders' meeting minutes and certificates, and directors' resolutions and minutes.

On August 9, 1986, without Vaccarello's presence, Monco and Janus met at Monco's office to sign numerous corporate documents including the documents that Vaccarello requested. In particular, Janus and Monco executed a shareholders' resolution setting forth their original agreement that they each would assign all patent rights to Jisconi; that Monco would prepare the patent applications; and that Monco and Janus would equally share the expenses of the business. Monco and Janus also executed share certificates showing each to own 500 shares of Jisconi stock and meeting minutes of the first shareholders' meeting formally designating themselves as Jisconi's

---

[1]Aside from the facts essential to our legal analysis, we believe it important to note that, during the winter, spring and summer months of 1986, Monco and Janus pursued Jisconi matters with great effort, enthusiasm and cooperation. Some of the more significant accomplishments were the manufacturing of different prototypes, the preparation of a 60-page marketing report and the contact of a large soft-drink concern as a potential purchaser. Other accomplishments occurred but they are too numerous to recount in full detail. As explained later, this era of cooperation and enthusiasm ultimately ceased and deadlock occurred.

sole directors. Monco and Janus dated these documents as of November 1, 1985, to conform the written record to their agreement as of the time of incorporation. Janus gave the executed documents to Vaccarello; neither Janus nor Vaccarello objected to the documents at any time thereafter.

Beginning in late summer, Janus began to voice objections to Monco regarding Monco's naming of himself as an inventor on the previously filed CIP application. Controversy also arose over the sharing of business expenses and Janus' complaint that Monco had assumed control of Jisconi even though Janus was president of Jisconi. These differences soon led to a total breakdown in the parties' relationship. In early September, a meeting was held between Monco and Janus and their respective counsel in an attempt to resolve the deadlock. The meeting was only partially successful. However, despite the parties' differences, on September 29, 1986, Janus executed an application for a design patent and another assignment of all patent rights to Jisconi. Neither Janus, Dvorak nor Vaccarello objected.

In December 1986, Janus arranged a meeting with Monco in an attempt to resolve the deadlock. At this meeting, to correct an omission in the original patent application, Janus executed replacement documents, including another assignment to Jisconi. These documents were executed without the presence of Janus' counsel. Janus explained he executed this assignment under the assumption that the parties were going to reconcile. He further explained that he believed Monco was still his attorney and, pursuant to Monco's instructions, his signature was in Jisconi's best interests. At this same meeting, after Janus executed the replacement documents, Monco told Janus that Jisconi could not continue in light of the deadlock and so he gave Janus a proposed buy-out agreement. Janus refused to sell his shares and later made a counter proposal to purchase Monco's shares. The parties remained deadlocked.

Monco initiated this lawsuit by filing his petition to dissolve Jisconi in February 1987. Janus counterclaimed in June 1987 alleging undue influence, overreaching and Monco's failure to inform Janus that, upon Jisconi's dissolution, each party could get 100% of the non-exclusive rights to market the patent and keep profits without accounting to the other. Janus alleged that he did not know this legal consequence, as it was a peculiarity of the patent laws, and requested as relief that the assignment to Jisconi be vacated, that Monco's 50% interest in Jisconi be forfeited as an excessive fee, and that damages be awarded.

In July 1988, Monco filed a motion for summary judgment on Janus' counterclaim and a motion for sanctions against Janus, Janus' attorney Marvin Benn, and the law firm of Hamman & Benn. In the motion for summary judgment, Monco claimed that he was acting as Janus' business partner and not as his attorney. On October 17, 1988, the circuit court denied the motion for summary judgment.

In May and June 1989, a nine-day trial was held on Janus' counterclaim. At its close, the circuit court ruled that Janus had proved that an attorney-client relationship existed between Monco and Janus and that Monco had benefited from the relationship. Therefore, under *Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 534 N.E.2d 971, the court stated that Monco carried the burden of proving by clear and convincing evidence that: (1) he made a full and frank disclosure of all relevant information to Janus; (2) he gave adequate consideration to Janus to obtain his 50% interest; and (3) Janus had independent legal advice before completing the transaction. The court also ordered additional briefing on Monco's newly tendered defense that Janus ratified Monco's alleged improper conduct.

On October 4, 1989, the court ruled that Monco had not presented clear and convincing evidence that he had made full and frank disclosure of all relevant information to Janus. The court found in particular that Monco failed to advise Janus of the option of licensing the patent to Jisconi, as opposed to assigning it, and that Monco failed to inform Janus that Janus would lose exclusive control of the patent in the event of dissolution.

Additionally, the court found that Monco failed in his burden of showing that he gave adequate consideration to support his 50% interest in Jisconi. The court was persuaded by the fact that Monco was on his firm's payroll at the time he performed the legal services which Monco claimed supported his one-half interest. On the final factor, the court found that Janus had not received independent counsel prior to executing the initial assignment.

On the issue of ratification, the court opined that even though Monco had exercised undue influence, the conduct of Janus and his counsel in not objecting to Monco's conduct resulted in the ratification of the entire transaction, which the court found voidable, not void. In its reasoning, the court drew an adverse inference against Janus for his repeated assertions of the attorney-client privilege with respect to attorneys Dvorak and Vaccarello. Based on this inference, the court concluded that, as early as February 1986, Janus had independent legal advice and full knowledge of the consequence of the assignment to Jisconi.

After the court's ruling, Monco filed an amended motion for sanctions. At the hearing on Monco's motion in December 1989, the court denied Janus' motion for leave of court to file for the first time his affidavit and the affidavits of his attorneys, Marvin Benn and Dawn M. Cassie, all of which Janus tendered to show the veracity of the allegations in his counterclaim. Relying on the findings within its prior ruling, the circuit court denied Monco's motion for sanctions. The petition to dissolve Jisconi has been stayed pending disposition of this appeal.

Monco appeals the denial of his motion for sanctions, alleging that the circuit court abused its discretion in denying the motion in light of: (1) the overwhelming evidence of Janus' ratification; (2) Janus' offensive use of the attorney-client privilege; (3) the false statements of fact contained in Janus' counterclaim; (4) Janus' willful failure to investigate the facts alleged in the counterclaim; and (5) Janus' threat to file professional complaints against Monco in an effort to force Monco to settle. Janus cross-appeals the dismissal of his counterclaim, alleging: (1) the circuit court erred in its application of the test required of an attorney to overcome an unduly influenced transaction; (2) public policy precludes an attorney from asserting the defense of ratification to a transaction with a client where that transaction is tainted by undue influence; and (3) public policy precludes the defense of ratification to an attorney-client transaction where the attorney has given inadequate consideration in exchange for the benefits the attorney received.

The first issue we address is whether a client's subsequent conduct can cure an attorney-client transaction which is the product of the attorney's undue influence. This is an issue of first impression in Illinois.

●■ ■ Transactions between attorneys and clients are closely scrutinized. When an attorney engages in a transaction with a client and is benefited thereby, a presumption arises that the transaction proceeded from undue influence. (*Klaskin*, 126 Ill. 2d at 388, 534 N.E.2d at 975.) Once a presumption is raised, the burden shifts to the attorney to come forward with evidence that the transaction was fair, equitable and just and that the benefit did not proceed from undue influence. (*Klaskin*, 126 Ill. 2d at 388, 534 N.E.2d at 975.) Because a strong presumption of undue influence arises when an attorney engages in a transaction with a client and is benefited thereby, courts require clear and convincing evidence to rebut this presumption. (*Klaskin*, 126 Ill. 2d at 388, 534 N.E.2d at 975; *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 465, 448 N.E.2d

872, 878.) Some of the factors the courts deem persuasive in determining whether the presumption of undue influence has been overcome include a showing by the attorney (1) that he or she made a full and frank disclosure of all relevant information; (2) that adequate consideration was given; and (3) that the client had independent advice before completing the transaction. (*McFail v. Braden* (1960), 19 Ill. 2d 108, 118, 166 N.E.2d 46, 52.) Once the presumption has been rebutted, the burden of production and persuasion is again on the client to show undue influence. *Franciscan Sisters*, 95 Ill. 2d at 466, 448 N.E.2d at 878.

In this case, the circuit court initially concluded that Monco had failed to rebut the presumption of undue influence. The basis for this conclusion was Monco's failure to prove by clear and convincing evidence the three *McFail* factors noted above. Although Monco has not directly appealed the circuit court's conclusions on the three *McFail* factors, even if he did, we would find those conclusions to be supported by the manifest weight of the evidence.

■ Initially, we agree with the circuit court that an attorney-client relationship existed between Monco and Janus. The evidence supports that Monco was acting as the attorney for Jisconi as well as for both himself and Janus. While the evidence also shows that Monco and Janus were business partners, Monco's role as Janus' partner does not foreclose the conclusion that Monco was also Janus' personal attorney.

We also agree with the circuit court that Monco entered into a beneficial business transaction with Janus. Accordingly, under relevant supreme court precedent, Monco was required to prove by clear and convincing evidence the three *McFail* factors. We agree that Monco failed to meet his burden.

Under the first factor, it cannot be readily disputed that Monco failed to give Janus a "full and frank disclosure of all relevant information" prior to Janus making the first assignment of all his rights in the patent to Jisconi. Monco admitted at trial that he did not learn of the effect of Jisconi's dissolution under the patent laws until shortly before he filed his petition for dissolution in February 1987. Thus, there is no way Monco could have timely given Janus the required information.

Under the second factor, Monco did not present clear and convincing evidence to show that he gave adequate consideration to support the 50% ownership interest in Jisconi he received. Admittedly, Monco was the "brains" behind taking the appropriate measures to assure that Janus' idea became patented and that the idea was marketed

profitably. In this regard, Monco spent, as he testified, hundreds of hours of his own time working on Jisconi matters. While Monco worked on Jisconi at a time when he was fully compensated by his firm, Monco testified that his work on Jisconi prevented him from billing firm clients which in turn contributed to a lower yearly salary. Aside from the legal and nonlegal time Monco contributed towards Jisconi, the record shows that Monco contributed over $13,000 in capital contributions. These expenses were never reimbursed by Jisconi. Moreover, Monco fronted Janus' one-half of the expenses from time to time when Janus became unable to pay his share.

Notwithstanding the above consideration contributed by Monco, we agree that it was not clear and convincing evidence of adequate consideration. Monco's 50% interest gave him an equal voice in Jisconi affairs. If Janus and Monco disagreed, Monco's interest gave him the ability to deadlock Jisconi's affairs and potentially hold Janus hostage. It must be remembered that this extreme leverage was given to Monco at a time when an attorney-client relationship existed. More importantly, the beverage container idea originated with Janus. Even in Monco's opinion, the idea had great money-making potential. We agree that Monco's labor and capital contributions were not adequate consideration to support the benefits which Monco could ultimately reap.

As for the third factor, the record shows that Janus did not have independent counsel before executing the first assignment. According to Janus, at this stage of their relationship, Monco was his personal attorney and was looking out for his interests. Although Monco advised Janus to have independent counsel to look over his work, this advice was insufficient. Janus' trust in Monco was great. The two had been personal acquaintances since 1970, and Janus had consulted Monco on two prior occasions regarding other patentable ideas. In light of Janus' extreme trust in Monco, Monco's suggestion that Janus have someone look over his work was insufficient to satisfy Monco's obligation to assure that Janus had independent counsel before executing the assignment.

As the foregoing analysis shows, we agree that Monco failed to rebut the presumption of undue influence. Accordingly, we next focus on Monco's affirmative defense of ratification. Janus responds to this defense by arguing that, on public policy grounds, it is improper to apply the defense of ratification to an attorney-client transaction which is the product of the attorney's undue influence. Janus further

argues that ratification is improper where the attorney has given inadequate consideration in exchange for the benefits he has received.[2]

■ We disagree with Janus' assertion that public policy would *per se* prohibit the application of the affirmative defense of ratification to an attorney-client transaction which is the product of the attorney's undue influence. We note that attorney-client transactions are not void in Illinois but merely presumptively fraudulent. (*In re Marriage of Pagano* (1989), 181 Ill. App. 3d 547, 558-59, 537 N.E.2d 398, 405.) This presumption has as its basis the public policy against attorneys using their position of trust and dominant power to take unfair advantage of their client during an attorney-client transaction. (*Franciscan Sisters*, 95 Ill. 2d at 464-65, 448 N.E.2d at 878.) To satisfy the demands of this public policy, our supreme court created the presumption of undue influence and the clear and convincing standard required to overcome it. *Franciscan Sisters*, 95 Ill. 2d at 465, 448 N.E.2d at 878.

■ The fact that attorney-client transactions are voidable and not void supports our conclusion that in certain situations, a client's posttransaction conduct can properly amount to an affirmance of that transaction notwithstanding that it is the product of the attorney's undue influence. To hold otherwise would, in our opinion, unsettle attorney-client transactions despite an attorney's reasonable reliance that the transaction was a "done deal." Moreover, to hold otherwise would contradict settled principles of traditional contracts and trusts law relating to ratification. See 13 W. Jaeger, Williston on Contracts §1627 (3d ed. 1970); Restatement (Second) of Trusts §218(2) (1959); Restatement (Second) of Contracts §173 (1981).

Further support for our conclusion can be found in supreme court cases in which the doctrine of *laches* has been applied to bar a client's attempt to set aside a transaction which was the product of the attorney's undue influence. (See *Masters v. Elder* (1950), 407 Ill. 512, 95 N.E.2d 360 (*laches* defense rejected on facts); *Gaffney v. Harmon* (1950), 405 Ill. 273, 90 N.E.2d 785 (*laches* applied—16-year delay); *Elmore v. Johnson* (1892), 143 Ill. 513, 32 N.E. 413 (*laches* applied—

---

[2]We reject Janus' assertion that the circuit court misapplied the *McFail* factors. All three factors were resolved against Monco and, but for the defense of ratification, the undue influence analysis would cease. Ratification is an affirmative defense which seeks to affirm an otherwise invalid transaction based on independent, affirmative grounds. Thus, the fact that one or all three *McFail* factors were not met does not foreclose a ratification analysis; rather, the ratification defense presupposes such deficiency in an attorney's proof.

seven-year delay); see also *McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 536 N.E.2d 419 (ratification allowed in trustee-beneficiary setting).) Although *laches* and ratification are distinct defenses, we believe that they are sufficiently analogous to support our conclusion that no *per se* bar exists.

Having determined that there is no *per se* bar to the application of ratification as an affirmative defense, we must now determine what an attorney must show to sustain a ratification defense. In our opinion, in light of the strong public policy considerations triggered by these attorney-client transactions, an attorney asserting a ratification defense must make the same showing as he would in initially overcoming the presumption of undue influence. Thus, the same three *McFail* factors are relevant to a ratification analysis, except they would be modified somewhat to reflect a post-transaction analysis.

■ We find support for our conclusion that the *McFail* factors are relevant in a ratification analysis in the Restatements (Second) of Trusts and Contracts. Section 218 of the Restatement (Second) of Trusts provides:

"Discharge of Liability by Subsequent Affirmance

(1) Except as stated in Subsection (2), if the trustee in breach of trust enters into a transaction which the beneficiary can at his option reject or affirm, and the beneficiary affirms the transaction, he cannot thereafter reject it and hold the trustee liable for any loss occurring after the trustee entered into the transaction.

(2) The affirmance of a transaction by the beneficiary does not preclude him from holding the trustee liable for a breach of trust, if at the time of the affirmance

(a) the beneficiary was under an incapacity; or

(b) the beneficiary did not know of his rights and the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

(c) the affirmance was induced by improper conduct of the trustee; or

(d) the transaction involved a bargain with the trustee which was not fair and reasonable." (Restatement (Second) of Trusts §218 (1959).)

The Restatement (Second) of Contracts contains a similar provision:

"When Abuse of a Fiduciary Relation makes a Contract Voidable

     If a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary, unless

     (a) it is on fair terms, and

     (b) all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know." (Restatement (Second) of Contracts §173 (1981).)

As the Restatements make clear, a beneficiary's ratification of a voidable trustee-beneficiary transaction requires at least full knowledge and fairness. This is consistent with our conclusion that the *McFail* factors are relevant to our analysis in this case.

     Having determined the essentials of a ratification defense, we now focus on their application to this case. Relying on *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 80, the circuit court concluded that Janus' repeated assertions of the attorney-client privilege required a negative inference to be drawn with respect to Janus' knowledge of the relevant patent laws. In *Galante*, the plaintiffs brought an action to recover insurance proceeds after certain property in which they claimed an interest was destroyed by fire. The insurance companies denied liability and raised the affirmative defense of arson. The defendants deposed the plaintiffs, but the plaintiffs invoked their fifth amendment privilege. The defendants then moved to dismiss the plaintiffs' suit, which the court granted with prejudice.

     The appellate court determined that because plaintiffs forced defendants into court, it would be unjust to allow plaintiffs to prosecute their case and, at the same time, refuse to answer questions, especially where the answers may substantially support defendants' defense. The court reasoned that plaintiffs should not be permitted to use the fifth amendment privilege as both a shield of protection and a sword of attack. *Galante*, 66 Ill. App. 3d at 482, 384 N.E.2d at 62.

     ■ As more fully explained below, we believe it unnecessary to the disposition of this case for this court to render an opinion as to whether *Galante* permits the negative inference which the circuit court drew against Janus. We previously stated that the same three *McFail* factors which are relevant to a "traditional" judicial review of an attorney-client transaction are also relevant when assessing whether a ratification has taken place. During its analysis, the circuit court initially concluded that Monco had failed to present clear and convincing evidence as to *any* of the three *McFail* factors. In its rati-

fication analysis, the circuit court relied on *Galante* to conclude that Janus' ratification occurred with the benefit of independent counsel and full knowledge of the effect the patent laws had on an assignment of a patent to a jointly owned corporation which later dissolved.

Our disagreement with the circuit court's ratification analysis is that the court failed to address for the second time whether the Monco-Janus transaction was fair. Even if *Galante* permits a negative inference, on which point we again express no opinion, such inference fails to address the fairness of the transaction. As we have stated, the fairness of the transaction is a separate and indispensable inquiry to a ratification analysis of an attorney-client transaction. Because we conclude that the Monco-Janus transaction is unfair, we hold that the affirmative defense of ratification is unavailable to Monco.

■■ As previously discussed, Monco did not present clear and convincing evidence that he gave adequate consideration to support the 50% interest he received in the patent. Monco has not directly appealed this finding and, in any event, it is supported by the manifest weight of the evidence. Even when all of the benefits Monco conferred are taken together, we believe they are out of proportion to the 50% interest he received and the corresponding rights associated with a shareholder holding such interest. Accordingly, for these reasons, the circuit court erred in dismissing Janus' counterclaim.

As an independent ground to affirm the dismissal of Janus' counterclaim, Monco asks this court to rely on *Galante* and dismiss Janus' counterclaim as a sanction for his offensive assertion of the attorney-client privilege. We question, however, whether the sanction of dismissal in *Galante*, which was founded in equity and public policy, can interfere with this court's responsibility, similarly founded in equity and public policy, to independently assess an attorney-client transaction and set it aside when found to be unfair. Because we believe a court's authority to grant a sanction must yield to its responsibility to set aside unfair attorney-client transactions, we refuse to grant Monco the dismissal he seeks.

■■ The unfairness of the transaction, and this court's duty to set it aside, is made even more clear in light of the Code of Professional Responsibility. This court has found the Canons of Ethics within the Code a relevant consideration in malpractice actions between attorney and client. (*Coughlin v. SeRine* (1987), 154 Ill. App. 3d 510, 507 N.E.2d 505; *Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201, 407 N.E.2d 47; see also *Klaskin*, 126 Ill. 2d at 396, 534 N.E.2d at 979 ("An attorney who deals with a client *** must comply with at

least minimal standards of professional conduct").) We believe it would be anomalous to find these same rules inapplicable in judging the fairness of an attorney-client transaction.

●■ Rule 5—104(a) prohibits a lawyer from entering a business transaction with a client if they have conflicting interests therein and if "the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure." (107 Ill. 2d R. 5—104(a).) Here, the initial assignment of Janus' patent rights to Jisconi and Monco's 50% interest therein allowed Monco to deadlock Jisconi. At the same time as the assignment, Janus expected Monco to exercise professional judgment on his behalf. Monco's representation of Janus and his ownership interest in Jisconi cannot be reconciled, as Monco's position in this case makes apparent. Janus was never informed on these matters, nor for that matter, of his right to expect under the Canons Monco's zealous representation of his interests (107 Ill. 2d Canon 7) and Monco's exercise of independent professional judgment on his behalf (107 Ill. 2d R. 5—101).

●■ In summary, we conclude that the circuit court erred in dismissing Janus' amended counterclaim. Although we have considered the issue, we do not at this time address the relief to which Janus is entitled under his counterclaim. First, the parties have not briefed this issue. Second, we believe the trial court is in a better position than this court to fashion a remedy consistent with this opinion after the reception of additional evidence and additional briefing if the court so desires.

The second issue we address relates to the circuit court's denial of Monco's petition for sanctions. Apparently, the parties do not agree on whether this motion is governed by section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) or by Supreme Court Rule 137 (134 Ill. 2d R. 137). These two rules are the same except that Rule 137 provides that a circuit court "may" impose sanctions for violations of the rule while section 2—611 provides that sanctions "shall" be imposed. Janus contends that this difference impacts this court's review because Rule 137 gives a circuit court even more discretion in ruling on a petition for sanctions.

In this case, the subject of Monco's sanctions motion is Janus' amended counterclaim filed in November 1987. Because the effective date of Rule 137 was August 1, 1989, it does not apply to Janus' pleading. (*In re Petition of Village of Kildeer to Annex Certain Territory* (1989), 191 Ill. App. 3d 713, 719 n.1, 548 N.E.2d 654, 657 n.1, *aff'd* (1988), 124 Ill. 2d 533, 530 N.E.2d 491; *People ex rel. Village of*

*Buffalo Grove v. Village of Long Grove* (1990), 199 Ill. App. 3d 395, 417, 557 N.E.2d 643, 658.) Accordingly, Monco's motion is governed by section 2—611, which provides in part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this Section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction ***." Ill. Rev. Stat. 1987, ch. 110, par 2—611.

Before turning to the merits of Monco's petition, an issue is presented as to whether Monco's motion for sanction names the proper parties as defendants. Monco's motion names Janus, Marvin Benn and the law firm of Hamman & Benn. Relying on section 2—611 and *Pavelic & LeFlore v. Marvel Entertainment Group* (1989), 493 U.S. 120, 107 L. Ed. 2d 438, 110 S. Ct. 456, Janus contends that the only proper defendants in a section 2—611 petition are the client and the attorney signing the pleading in question. Accordingly, Janus contends that the only proper defendants in this case are himself and Dawn Cassie, the attorney who signed the amended counterclaim. Monco responds that Janus asserts this argument for the first time on appeal and that the proper parties have been named.

●■ Rule 11 of the Federal Rules of Civil Procedure and section 2—611 are virtually identical. Therefore, Federal court interpretation of Rule 11 matters may be used as guidance in section 2—611 matters. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 621, 532 N.E.2d 595, 599.) As with section 2—611, Rule 11 provides that a sanction for a violation of the rule shall be imposed upon the "person who signed" the pleading in question, or the represented party, or both. In *Pavelic*, the Supreme Court addressed the issue of whether the phrase "person who signed" limits the people against whom a fine may be imposed to the signing attorney or whether his law firm may also be fined. The Court, using a plain meaning approach to interpreting the rule, concluded that only the attorney who actually affixes his name to the pleading in question is subject to fine, even though that attorney signs on behalf of the entire law firm.

●■ 14 We find *Pavelic* persuasive. In this case, it is undisputed that Dawn Cassie is the only attorney who signed the amended counterclaim. Admittedly, Marvin Benn and the firm of Hamman & Benn have played a significant role on behalf of Janus in prosecuting the counterclaim. Under *Pavelic*, however, only signing parties are liable; Marvin Benn nor the law firm are such parties. As for the issue of waiver, while a party can waive arguments raised for the first time on appeal (*e.g., People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313, 335 N.E.2d 448, 453), a party cannot waive the authority of the appellate court to affirm on any ground appearing in the record. (*Keck v. Keck* (1974), 56 Ill. 2d 508, 514, 309 N.E.2d 217, 220; *Redd v. Woodford County Swine Breeders, Inc.* (1977), 54 Ill. App. 3d 562, 565, 370 N.E.2d 152, 154.) Accordingly, we affirm the circuit court's denial of Monco's motion for sanctions on the ground that only Janus was properly named as a defendant. In any event, because dismissal under this analysis is only partial, we address the merits of Monco's appeal.

To support his section 2—611 argument, Monco directs this court's attention to five allegations of fact within Janus' amended counterclaim which Monco alleges are false and reflect little or no investigation:

"3. In 1984, Janus consulted with Monco *with regard to applying for a patent for one of Janus' ideas*, the Joggers' Aid. Monco was very enthusiastic about the invention and expressed interest in providing all legal services necessary for pursuing a patent for the invention *in exchange for an interest in the patent.*

\* \* \*

7. Monco was Janus' sole legal counsel from 1984 through *mid-1986*, when Janus decided to consult another attorney.

\* \* \*

9b. Monco *insisted* [in violation of the Code of Professional Responsibility] upon being a 50% shareholder in JI-SCO-NI Corporation, an excessive fee for such legal services.

\* \* \*

9f. Janus was *induced* to sign the CIP [application] upon Monco's assurances that this was in Janus' and JI-SCO-NI's best interests and that Monco was so entitled in light of his contributions." (Emphasis added.)

We find that Monco's motion for sanctions was properly dismissed. Initially, Monco's appeal must be taken in light of the circuit court's findings and this court's affirmance that an attorney-client re-

lationship existed between Monco and Janus; that Monco failed to make a full and fair disclosure of all relevant information to Janus before obtaining the initial assignment; and that Monco did not give adequate consideration for his interest in Jisconi. These findings of fact lean heavily against Monco's assertion that Janus' counterclaim was not "well grounded in fact" as required by section 2—611.

Additionally, Monco's appeal must be taken in light of the burden of proof and standard of review in section 2—611 actions. In order for a movant to prevail under section 2—611, he must prove that the allegations contained in a pleading were false and that the pleader did not have reasonable cause to believe the allegations were true when made. (*Peoples Gas Light & Coke Co. v. Black Steer Provision Co.* (1985), 131 Ill. App. 3d 387, 390, 475 N.E.2d 1012, 1015.) The party opposing the motion need not present any proof as to the truthfulness or reasonableness of the allegations until the movant has sustained his burden of proof. (*Peoples Gas*, 131 Ill. App. 3d at 391, 475 N.E.2d at 1016.) As for the standard of review, rulings on section 2—611 motions will not be reversed absent an abuse of discretion. *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 478 N.E.2d 1132.

In this case, Monco has not shown an abuse of discretion, falsity, or the lack of reasonable inquiry. For example, the allegations of paragraph 3 have support in the record. Janus testified that prior to the kitchen table meeting, he had consulted with Monco regarding the patentability of other ideas. After some preliminary work by Monco, Janus accepted Monco's advice that these ideas should not be pursued. Regarding the kitchen table meeting, Janus testified he went to Monco as he had the prior two times. The discussion which ensued was lengthy and covered a broad number of topics. Considering that Monco was a patent attorney who had advised Janus on the patentability of prior ideas, it is very realistic to characterize the kitchen table discussion as covering the topic of patentability of the beverage container. Clearly, the allegation cannot be claimed as false or not well grounded in fact.

Similarly, as for the other allegations in paragraph 3, Monco testified that he would provide free legal services to the venture and that he agreed to become a one-half owner of the business. Again, the allegation that Monco agreed to provide free legal services in exchange for his interest in the patent is well grounded in fact.

As for the allegations in paragraphs 9b and 9f, Janus testified that Monco indicated he would not accept anything less than a 50% interest in Jisconi. His conduct throughout the parties' relationship and his position in this case are consistent with his insisting on a 50%

interest. Monco also testified regarding the CIP application that the patent laws required his name to appear on the application because he had contributed ideas to the invention. He testified that he conveyed this information to Janus; Janus testified that he followed this advice. Accordingly, Janus' use of the word "inducement" is neither false nor reflects the lack of reasonable inquiry.

Finally, as for paragraph 7, Monco again has shown no section 2—611 violation. Admittedly, Janus' deposition and trial testimony reflect that Janus' consultations with attorney Dvorak began as early as February 1986. In addition, Janus testified that he consulted other, non-patent attorneys regarding personal matters prior to February 1986. Thus, Monco was not Janus' exclusive attorney until *"mid-1986."* This discrepancy, however, does not embrace a violation of section 2—611. Again, Janus' counterclaim must be taken in light of the circuit court's overall finding in favor of Janus and against Monco. Moreover, although Janus can be considered in hindsight to be foolish in this belief, he felt in his own mind that Monco was his attorney *throughout the duration of this transaction or at least was looking out for his interests.* Thus, in Janus' mind, and at the very least, Monco was his "sole legal counsel" through mid-1986. This allegation has sufficient support in the evidence. Accordingly, we affirm the circuit court's conclusion that neither Janus nor his counsel violated section 2—611.

As for Monco's assertion that sanctions are nonetheless proper as a result of improper threats made by Janus' counsel to settle the litigation, it too is without merit. Monco's assertion is predicated upon a May 1987 letter from Marvin Benn to Monco. We have reviewed this letter and note that it simply makes no threat of disciplinary action. Moreover, Janus' counterclaim, which seeks to set aside a transaction resulting from undue influence, can in no way be construed as reflecting an improper purpose.

For the foregoing reasons, we affirm the circuit court's denial of Monco's motion for sanctions, but reverse the dismissal of Janus' counterclaim. Because of the conclusion reached on the sanctions issue, Janus' appeal regarding the three affidavits will not be addressed.

Affirmed in part; reversed in part and remanded.

MANNING, P.J., and CAMPBELL, J., concur.