(No. 73162.—

*In re* MARRIAGE OF JANET PAGANO, Appellant, and
THOMAS PAGANO (Rinella & Rinella, Ltd., Appellee).

*Opinion filed December 4, 1992.—Rehearing
denied February 1, 1993.*

John S. Elson, of Chicago, for appellant.

Law Offices of William I. Ferguson, of Wheaton (William I. Ferguson and Alicia S. Evans, of counsel), and Paul P. Biebel, Jr., and Susan L. Mahoney, of Winston & Strawn, of Chicago, for appellee.

Floyd N. Nadler and Ilene E. Shapiro, both of Chicago, for *amicus curiae* American Academy of Matrimonial Lawyers, Illinois Chapter.

Peter H. Lousberg, Dennis A. Rendleman and Mary T. McDermott, of Springfield, and Barry A. Schatz and Jacalyn Birnbaum, of Kalcheim, Schatz & Berger, of Chicago, for *amicus curiae* Illinois State Bar Association.

JUSTICE CLARK delivered the opinion of the court:

Appellant, Mrs. Janet Pagano (Mrs. Pagano), appeals an order of the appellate court affirming a circuit court decision requiring her to pay attorney fees to appellee, Rinella & Rinella, Ltd. (Rinella).

The facts underlying this case are detailed in *In re Marriage of Pagano* (1989), 181 Ill. App. 3d 547 (*Pagano I*) and involve a fee dispute between Mrs. Pagano and her former attorney, Rinella. The appellate court, in *Pagano I*, held that despite Mrs. Pagano's written waiver, she was entitled to a fee hearing under section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 508). Consequently, the appellate court remanded the cause to the circuit court for a determination of whether Rinella's fees were reasonable and also instructed the circuit court to determine if Rinella exercised undue influence or breached its fiduciary duties to Mrs. Pagano in its dealings with her. *Pagano*, 181 Ill. App. 3d 547.

On remand, the circuit court, following a section 508 hearing, issued an order on April 30, 1990, awarding Rinella fees in the amount of $21,470.25. It ordered Thomas Pagano (Mr. Pagano), Mrs. Pagano's ex-husband, to pay 60% ($12,882.15) of these fees. It also determined that Rinella did not act improperly toward Mrs. Pagano and held her responsible for the balance. The appellate court affirmed the circuit court's decision in an unpublished order (No. 2—90—1222 (unpublished order under Supreme Court Rule 23)) (hereinafter *Pa-*

*gano II*). We granted Mrs. Pagano's petition for leave to appeal (134 Ill. 2d R. 315).

In this appeal, Mrs. Pagano no longer attacks the reasonableness of the reduced fee awarded to Rinella, but focuses on the circuit court's finding that Rinella did not breach its fiduciary duty or exert undue influence. Mrs. Pagano also argues that Rinella breached a contractual obligation to her in not seeking its fees from Mr. Pagano prior to seeking them from her. Lastly, Mrs. Pagano argues that the circuit court's decision to charge her with 40% of Rinella's fees is unjustified in light of her relatively weaker financial status to that of her ex-husband.

## FACTS

In January of 1985, Mrs. Pagano paid a $2,500 retainer to Rinella to represent her in dissolution of marriage proceedings. There was then no written attorney fee agreement between Rinella and Mrs. Pagano. Testimony indicated that Rinella told Pagano that while she ultimately would be responsible for attorney fees, the firm would first attempt to collect fees from Mr. Pagano, pursuant to section 508 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 508).

On May 20, 1986, almost a year and a half after the Rinella firm agreed to represent Mrs. Pagano, the firm sent her a letter, signed by Richard A. Rinella, which stated the following:

> "Pursuant to our telephone conversation, I am enclosing herein an Order whereby you are agreeing to pay our law firm the sum of $20,000.00 as and for additional attorneys' fees. To date we have spent 22.5 hours of court time and 72.5 hours of office time in our representation of you. As you are well aware, your husband has filed a Petition for Custody and at this date appears serious about proceeding with the custody issue. In addition,

your husband has refused to accept our proposal of settlement with respect to the child support, maintenance and property distribution and has made a counter proposal which is totally unacceptable. It therefore appears that we will be spending numerous hours of court time and office time in our representation of you in the future."

The proposed agreed order included with the letter indicated that it was prepared pursuant to section 508 of the Act and stated:

"IT IS HEREBY ORDERED:

1. That JANET B. PAGANO having been advised of her right to a full and complete hearing with respect to her attorneys' fees under section 508 of the Illinois Marriage and Dissolution of Marriage Act, and having knowingly waived her right to said hearing, agrees that she shall pay to RINELLA AND RINELLA, LTD. the sum of TWENTY THOUSAND ($20,000.00) DOLLARS as and for additional fees she has already paid said law firm.

2. That Judgment is hereby awarded RINELLA AND RINELLA LTD., against JANET B. PAGANO for said sum and said Judgment shall be a lien against her interest in the residence located at 7 South 441 Donwood Drive, Naperville, Illinois until paid in full."

Mrs. Pagano signed the proposed agreed order and the court entered it on June 2, 1986. At that time, Rinella's time sheets showed that $15,000 in attorney fees had accrued.

Almost a year later, on May 14, 1987, Richard Rinella and an associate, Steven Russo, met Mrs. Pagano in the courthouse cafeteria just prior to the start of dissolution proceedings. Before leaving for the proceedings, Richard Rinella presented Mrs. Pagano with a second proposed agreed order. This proposed agreed order was similar to the first but was handwritten, indicated the sum of $30,000 instead of $20,000, and again waived Mrs. Pagano's right to a section 508 hearing. The second proposed order stated that Mrs. Pagano's waiver was made

"knowingly, intelligently, and voluntarily" and that the waiver was made "without coercion or duress." It did not purport to modify or rescind the previous agreed order, nor did it refer to the first agreed order in any way. Similar to the first agreed order, however, it indicated that judgment was "hereby entered" in favor of Rinella and that such judgment created a lien on her residence. Mrs. Pagano signed the second proposed agreed order and it was entered four days later.

On September 14, 1987, after the dissolution proceedings had concluded, Rinella was allowed to withdraw as Mrs. Pagano's attorney. A week later, Rinella sought additional security for its fees by filing a petition for $36,334.15 against both Mrs. Pagano and Mr. Pagano. On December 2, 1987, the court considered this petition in the presence of counsel representing both Mr. and Mrs. Pagano. Rinella attempted to stand on its petition which included the $30,000 agreed order and supporting time sheets. The court held that Rinella's petition was insufficient to award attorney fees against Mr. Pagano, and ordered that " 'the order entered on May 18, 1987, awarding Rinella & Rinella fees of THIRTY THOUSAND ($30,000) DOLLARS shall be the total fees awarded to Rinella & Rinella on this cause.' " See *Pagano*, 181 Ill. App. 3d at 552-53.

Mrs. Pagano subsequently sought post-judgment relief by filing a section 2—1401 petition with the circuit court (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401). (*Pagano*, 181 Ill. App. 3d at 553.) The circuit court denied this motion. Although the record is clear that the Rinella firm did not seek to use the $20,000 agreed order against either Mr. or Mrs. Pagano at the December 2, 1987, proceedings, the appellate court, in *Pagano I*, found that Rinella's conduct in having Mrs. Pagano sign the $30,000 order, was improper: "two agreed orders were entered in the present case for a total of $50,000

even though Rinella's own petition for fees indicated that only $37,034.15 had been earned. While it may have been the intent of Rinella to have the second agreed order supersede the first, that is not clear from the second order. Consequently, we find that both orders must be vacated since the two combined were excessive." The appellate court also reversed the December 2, 1987, order and remanded the cause for a hearing pursuant to section 508 of the Act. (*Pagano*, 181 Ill. App. 3d at 563.) Finally, the appellate court determined that the circuit court committed procedural error in not having before it "a petition for attorneys fees and an itemization of the billing including the hourly cost, the time spent on the case, and an itemization of the tasks performed" before it entered both the $20,000 and $30,000 agreed orders, although the court did not reverse on this particular point. *Pagano*, 181 Ill. App. 3d at 555.

## MRS. PAGANO'S CLAIMS

Mrs. Pagano claims Rinella breached its fiduciary duties to her in: (1) seeking a waiver of her right to a section 508 fee hearing; (2) not fully informing her of her right to a hearing under section 508, or of the legal effect of the agreed orders, or of her need for independent advice in deciding to sign the agreed orders; (3) not filing a fee petition detailing its charges against her when it filed the agreed orders with the court, or in not delivering to Mrs. Pagano a detailed bill; (4) attempting to include prospective fees in the agreed orders, and attempting to secure $50,000 in legal fees when claiming only $37,000 in fees; and (5) seeking to collect prejudgement interest from the date the $30,000 agreed order was entered. As we have noted, she also argues that Rinella breached its contractual promise to her to seek fees first from her ex-husband when it brought its December 2, 1987, fee hearing against her and Mr. Pagano. While she

does not dispute the fact that Rinella otherwise properly represented her, she takes the position that because of Rinella's alleged breach of its fiduciary duty and/or its breach of its promise to look to Mr. Pagano for first payment, she should not be made to pay any of Rinella's fees.

Finally, Mrs. Pagano argues that the trial court's decision requiring her to pay 40% of her attorney fees was error.

## ANALYSIS

We begin by reference to section 508 of the Act, which states:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse ***." (Ill. Rev. Stat. 1985, ch. 40, par. 508(a).)

The primary purpose of section 508 is to give the court the authority in a dissolution proceeding to equalize the relative positions of the parties before it, "diminishing any advantage one spouse may have over the other in the presentation of a case due to a disparity in their respective financial resources." (Ill. Ann. Stat., ch. 40, par. 508, Historical & Practice Notes, at 635 (Smith-Hurd 1980).) The language of this section does more, however, as it also gives the court hearing the dissolution claim the discretion of ordering attorney fees against a lawyer's own client. As the appellate court has correctly recognized in this regard, subsection (a) is intended to promote judicial economy by obviating the need for an attorney to sue his own client in separate proceedings. *In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050,

1054, citing Ill. Ann. Stat., ch. 40, par. 508, Historical & Practice Notes, at 635 (Smith-Hurd 1980).

Initially, Mrs. Pagano urges this court to hold that the fee hearing provisions of section 508 may not be waived prior to dissolution and, therefore, that Rinella's attempt to secure such a waiver breached its fiduciary duties to her. Such a non-waiver rule, she claims, would serve as a needed protection to the client in light of the adversarial relationship the statute creates between the attorney and client. (*In re Marriage of Pitulla* (1986), 141 Ill. App. 3d 956, 961 (noting that section 508 creates a conflict between a lawyer and his client "unique in, and *** otherwise inimical to the legal profession").) She also argues that such a holding would be consistent with the language of the statute which speaks of fee awards made "after due notice and hearing." Rinella argues that prohibiting the waiver of section 508 hearings would clutter the dockets of trial courts to an unmanageable degree and discourage lawyers from accepting divorce clients.

We decline to hold, as Mrs. Pagano urges, that the fee hearing provision of section 508 may never be waived by a client. We note that important hearing provisions of both the Federal and State Constitutions may be waived by clients such as the right to trial by jury. (*People v. Smith* (1985), 106 Ill. 2d 327, 333-34.) While we agree that the waiver of important rights such as those granted by section 508 cannot be made unless the client acts deliberately and understands the rights that he or she is waiving, we believe that the question of whether a proper waiver is made must turn on the particular factual situations that surround the parties. Here we look to see whether Rinella exerted undue influence over Mrs. Pagano or otherwise breached its fiduciary duties to her in the way in which it sought to secure the waivers.

A fiduciary relationship exists as a matter of law between an attorney and client (*In re Imming* (1989), 131 Ill. 2d 239, 252-53) and all transactions between them are subject to the closest scrutiny (*Gaffney v. Harmon* (1950), 405 Ill. 273, 277). What was noted 100 years ago remains true today: "Before the attorney undertakes the business of the client, he may contract with reference to his services, because no confidential relation then exists and the parties deal with each other at arm's length. The same is true in regard to dealings which take place after the relation has been dissolved. [Citation.] But the law watches with unusual jealousy over all transactions between the parties, which occur while the relation exists." (*Elmore v. Johnson* (1892), 143 Ill. 513, 525.) It is for this reason that when an attorney, once retained, enters into a transaction with a client, it is presumed that the attorney exercised undue influence. (*Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 386-87; *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-65; *Gaffney v. Harmon* (1950), 405 Ill. 273, 278.) It then becomes incumbent upon the attorney to rebut this presumption by a showing of clear and convincing evidence. (*Klaskin*, 126 Ill. 2d at 386-87; *Franciscan Sisters*, 95 Ill. 2d at 465.) We specifically reject Rinella's argument that the presumption of undue influence should not be applied when the subject matter of such an agreement involves the attorney's fees. Indeed, the client is in many ways in *greater* need of protection in such a case, as an unscrupulous attorney may unfairly use the extra leverage gained by the client's dependency. This is particularly so in the dissolution context where the attorney often has intimate knowledge of his client's financial and emotional condition so as to be able to gauge exactly how big a fee the client is likely to agree to accept before being willing to hazard the extra costs, delays and uncertainties of switching counsel.

The presumption of undue influence applied to agreements between attorneys and their clients is not conclusive, however, and may be rebutted by the attorney. This court has looked to several factors in determining whether such a presumption is overcome, including whether: (1) the attorney made a full and frank disclosure of all relevant information; (2) the client's agreement was based on adequate consideration, and (3) the client had independent advice before completing the transaction. (*Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 387; *In re Imming* (1989), 131 Ill. 2d 239, 255-56.) Other Illinois decisions have applied slightly different factors, including whether: (1) the agreement was offered by the lawyer with unquestionable good faith and with complete disclosure, (2) the client entered into the agreement with a full understanding of all facts and their legal importance, and (3) the client's decision was free from undue influence and was fair. (*In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050, 1056; *Drake v. Becker* (1973), 14 Ill. App. 3d 690, 694; see also *Gaffney v. Harmon* (1950), 405 Ill. 273, 278 ("[T]he burden of proof rests upon the attorney to show the fairness of the transaction, that it was equitable and just, that it did not proceed from undue influence").) The parties have disputed which factors control this case, as if one set of three factors must be applied to the exclusion of all others. Of course, our review is not so limited and all factors bearing on the fairness of the transaction must be considered.

The appellate court concluded in *Pagano II* that Rinella has successfully overcome the presumption upon it. We agree. After a five-day hearing on remand, the circuit court carefully considered the evidence offered by both Mrs. Pagano and Rinella and found that Mrs. Pagano understood the two agreed orders, that she was aware she was ultimately responsible for Rinella's fees

absent a court order directing her former husband to pay them, and that Rinella was not acting in bad faith when it obtained them. With regard to the fact that Rinella obtained agreed orders covering a total of $50,000 in fees when it knew that its charges against Mrs. Pagano were substantially less, the court stated that the second order was entered by the parties with the clear understanding that the first order had been superseded and, significantly, that this was the court's understanding at the time as well. It also held that there had been full disclosure regarding the agreed orders, that the adjusted fee award was reasonable and that there was no coercion. Finally, the circuit court found that Rinella proved these conclusions with clear and convincing evidence. The appellate court affirmed this decision in *Pagano II*.

Because Rinella has successfully rebutted the presumption against it, we decline to overrule the circuit court's decision to award Rinella fees. It is the obligation of the trial court to weigh the evidence and decide disputed questions of fact. (*Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 389.) The circuit court's conclusion that Rinella did not act improperly necessarily turned on its assessment of the credibility of the witnesses and the proper weight to be given to their testimony. The trial court was clearly in the best position to make these determinations. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 315.

Mrs. Pagano argues that Rinella breached its fiduciary duty to her by not advising her of her need for independent advice. Based upon our review of the record and the testimony of the parties, however, we agree with the conclusion that Mrs. Pagano fully understood the nature of the agreement she was asked to sign and was not, therefore, in need of independent advice. Moreover, we note that the failure of an attorney to counsel a cli-

ent to seek independent legal advice does not, by itself, mean that there has been undue influence. *In re Imming* (1989), 131 Ill. 2d 239, 259.

Nor do we believe that Rinella's attempt to secure prospective fees breached a fiduciary duty to Mrs. Pagano. In the appropriate circumstance the request for payment of fees reasonably expected to be earned by an attorney is completely proper. Indeed, Mrs. Pagano does not complain that Rinella initially required a $2,500 retainer. At the time Rinella sought to secure prospective fees there was confusion among the districts of the appellate court and the matrimonial bar as to whether prospective fees could be awarded under section 508. (See Ill. Ann. Stat., ch. 40, par. 508, Supplement to Historical & Practice Notes, at 201-02 (Smith-Hurd Supp. 1992).) For this reason the statute was amended January 1, 1988, to make clear that prospective fees could be awarded under the Act. Richard Rinella testified that at the time the first agreed order was drafted, he believed prospective fees were permissible, although he was unsure at the time of trial. We decline to overturn the circuit court and appellate court conclusions that Rinella's conduct in this regard was made in good faith.

Mrs. Pagano next argues that, although Rinella was not awarded any interest following the section 508 hearing, its attempt to collect interest on the $30,000 agreed order was a sufficient breach of its fiduciary duties so as to deny it any fees. However, Mrs. Pagano did not allege this theory in her pleadings, but first attempted to raise the question in her written final argument to the circuit court. The circuit court did not address this question; the appellate court found the question to have been waived. Because we agree with the appellate court's conclusion, we decline to reach this issue.

Mrs. Pagano also claims that Rinella breached its fiduciary duties in not filing a fee petition when it entered

the $20,000 and $30,000 agreed orders, and in not delivering to her an itemization of its claimed fees at the time it secured her signatures on the agreed orders. The appellate court in *Pagano I* held that, before entering a fee award pursuant to section 508, the trial court must be presented with a petition for fees and an itemization of the billing, including the hourly cost, the time spent on the case, and an itemization of the tasks performed. (*Pagano*, 181 Ill. App. 3d at 555.) We agree with this holding, as we believe that judges asked to award fees pursuant to section 508 must have some basis to conclude that their award is "reasonable." Again, however, we note that the circuit court listened over a five-day period to testimony regarding Rinella's fees and ultimately adjusted them to what it believed to be a fair amount for the work reasonably and necessarily performed. We also reject Mrs. Pagano's claim that Rinella failed to give her an itemization of the work it was performing for her, as the circuit court specifically found that Mrs. Pagano "extensively reviewed her own file and time sheets contained therein."

Mrs. Pagano urges that Rinella's failure to release its $20,000 agreed order at the time it obtained and entered the $30,000 agreed order amounted to an attempt by Rinella to secure an excessive fee. At the very least, Mrs. Pagano claims, Rinella's conduct created the appearance of impropriety. We note, however, that on remand the circuit court expressly held that at the time the second order was entered, Rinella, Mrs. Pagano and the court believed that the $20,000 agreed order was no longer enforceable.

In *Gaffney v. Harmon* (1950), 405 Ill. 273, this court had occasion to consider the case of an attorney alleged to have breached his fiduciary duty to a client when the lawyer retained title to the client's property and collected rents beyond the time agreed to by the parties

and beyond the time necessary for the lawyer to recover his reasonable fees. The court ordered the land conveyed to the client and required the lawyer to account for profits. Significantly, however, the court did not require the attorney to forfeit his reasonable "expenditures and a reasonable compensation for his services." *Gaffney*, 405 Ill. at 281.

Similarly, in *Oil, Inc. v. Martin* (1942), 381 Ill. 11, this court considered the case of a young attorney who acquired an interest in real estate adverse to the interests of her client. This court determined that the land was held in constructive trust for the benefit of the client and remanded the cause for a determination of the extent of the client's interest which was to be returned, "except such part, if any, agreed to be given [the lawyer] for services as attorney." (*Oil, Inc.*, 381 Ill. at 20.) The decision of the court to allow the attorney to recover fees was made despite the fact that the lawyer was found to have breached a fiduciary duty.

As these and many other cases demonstrate, when one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court. While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy (see, *e.g.*, *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 836), such will not always be the case. Punitive damages are *permissible* where a duty based on a relationship of trust is violated, the fraud is gross, or malice or willfulness is shown; such an award is not automatic. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 85; *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 284.) Thus, even were we to assume that Rinella had failed to rebut the presumption of undue influence properly upon it, we believe

that this case would not warrant a forfeiture of fees based upon our review.

The record here is extensive and documents a bitterly contested dissolution in which the parties were able to raise nearly every conceivable issue. During the course of the proceedings the parties brought more than 20 rules to show cause against one another in addition to several motions to compel filed on various issues. Mrs. Pagano was in constant communication with Rinella through repeated telephone calls and letters either encouraging Rinella to launch some legal attack against her husband or seeking advice on how she could defend herself against her husband's latest strategic assault. At one point Rinella had represented Mrs. Pagano for over 16 months while having been paid only $2,500. In the end, Mrs. Pagano has been ordered to pay 40% of Rinella's outstanding fees. While this does not represent an insignificant sum, we believe it only fair to require Mrs. Pagano to compensate Rinella for the extensive legal services rendered at her request and on her behalf.

We next address Mrs. Pagano's contract claim. The circuit court concluded that Rinella's agreement with Mrs. Pagano required the firm to file a fee petition against Mr. Pagano in an effort to recover those fees from him, but that Mrs. Pagano understood that, absent a court order, she was responsible for her legal fees. The letter sent by Rinella to Mrs. Pagano along with the $20,000 agreed order supports this conclusion:

> "We are having you sign this Order as security for the payment of our fees in the future. We most certainly will file a Petition for Fees against your husband and attempt to collect these fees from him. *However, in the event that the Court does not order your husband to pay our attorneys' fees, we must then look to you for the fees that are set forth in this Order.*" (Emphasis added.)

Because Rinella sought recovery from both Mr. and Mrs. Pagano at the December 2, 1987, proceedings, the court concluded that Rinella's obligations under its agreement were discharged. The appellate court agreed. In addition, we note that at the section 508 hearing, Rinella sought an allocation of fees from both parties, not just from Mrs. Pagano. We therefore agree with the appellate and circuit court conclusions that Rinella discharged its obligations under the agreement with Mrs. Pagano.

Finally, Mrs. Pagano argues that the circuit court's decision to require Mr. Pagano to pay only 60% of Mrs. Pagano's outstanding fees constituted an abuse of discretion. She claims the trial court committed error by improperly considering the fact that she failed to obtain a job during the pendency of the litigation, despite the fact that she was qualified to do so. She also notes that Mr. Pagano had considerably more assets from which to pay the fees and that she was primarily responsible for the care of her two young children during the time she was unemployed. While we are not unsympathetic to Mrs. Pagano's position, we do believe that the trial court's decision in this regard was not an abuse of its discretion. As noted by the appellate court, Mrs. Pagano originally exhibited thé ability to pay her attorney over $34,000, and that she is now required only to pay a total amount of less than $12,000, which includes the initial $2,500 retainer fee. Considering the complete record of her financial ability to pay, we agree that the court did not abuse its discretion in apportioning 40% of the attorney fees to Mrs. Pagano.

For the above reasons, the circuit and appellate court decisions are affirmed.

*Affirmed.*