SARAH VIVIAN LOSSMAN, Plaintiff, v. HARVEY LOSSMAN *et al.*, Defendants-Appellees and Counterdefendants and Cross-Appellants (Eugene Lossman *et al.*, Defendants; Hercules Paul Zagoras, Defendant-Appellant and Counterplaintiff and Cross-Appellee).

Second District   Nos. 2—94—1071, 2—94—1138 cons.

Opinion filed July 13, 1995.—Rehearing denied September 5, 1995.

Hercules Paul Zagoras, of Waukegan, appellant *pro se*.

Julian Johnson, of Waukegan, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The counterplaintiff, Hercules Paul Zagoras (Zagoras), brought this action against the counterdefendants, Harvey and Edward Lossman (collectively the Lossmans), to recover attorney fees he incurred in his previous representation of the Lossmans. In the counterclaim, Zagoras sought to foreclose a mortgage received from the Lossmans in the amount of $22,631.71, representing unpaid trial fees, fees on appeal, a $10,000 bonus, interest accrued at 5% from a previous mortgage between the parties, plus 12% interest from the date of the new mortgage. In addition, Zagoras sought to recover $1,406.25 in post-appeal services performed after the execution of the mortgage.

The trial court denied the request for trial fees, denied recovery of any post-appeal fees, and found that Zagoras was not entitled to the $10,000 bonus fee. The court did, however, award him $7,600 in appeal fees and costs, but at 5% interest. Both parties appealed the trial court's determination. For the reasons which follow, we affirm in part, reverse in part, and remand.

In 1988, the Lossmans, both retirees, hired Zagoras to defend them against Calvary Temple Assembly of God Church in a real estate contract action involving property they owned in Lake County, Illinois (the property). The parties agreed to the payment of a $3,000 retainer and fees at a rate of $125 an hour. On August 31, 1989, the court found against the Lossmans on the contract. Directly after the trial, the Lossmans, Zagoras, and Donna Boyer, counterdefendant Harvey Lossman's daughter, met in Zagoras' office to discuss the possibility of an appeal. Both Boyer and Zagoras testified that he quoted the Lossmans a flat rate fee of $7,000 to handle the appeal, plus a $10,000 "bonus" if he won.

On September 1, 1989, Zagoras informed the Lossmans by letter that they had until September 30, 1989, to file a notice of appeal, and that they would have to request a stay prior to that date. In the letter, Zagoras reiterated that his fee on appeal would be a flat rate of $7,000, plus costs of approximately $700. He did not mention anything about a $10,000 bonus in the letter, but included a statement for existing fees and expenses in the amount of $10,338.30. He stated that he hoped that the Lossmans could pay most of this statement and that he would wait for his appeal fees. He further noted that he wanted an acknowledgment of the balance of the debt, as well as an agreement as to appeal fees, in writing.

In letters dated September 11 and September 15, 1989, Zagoras again reminded the Lossmans of the September 30 deadline. Following the September 15 letter, Harvey advised Zagoras that he was going to bring in two people to sign an appeal bond. Zagoras subsequently filed the appeal bond, a motion for stay, and a notice of appeal before the September 30 deadline.

On October 2, 1989, the Lossmans met with Zagoras at his office. Harvey had previously informed Zagoras that he could not pay anything more on the trial court fees, having paid $6,000 since the September 1, 1989, statement. At the meeting, Zagoras presented to the Lossmans a letter, note, and mortgage on the property, all three of which they signed. The letter stated that the unpaid balance of Zagoras' fees was $4,338.30, and that he agreed to represent them on appeal and advance court costs for a total of $7,600. The letter also indicated that the Lossmans had signed a note and mortgage in the

amount of $11,938.30, at 5% interest. Finally, the letter stated that, by their signatures, the Lossmans agreed that Zagoras would be entitled to a $10,000 bonus if he prevailed on appeal, explaining that the bonus would be additional to the note and mortgage if he won. The note was made payable on November 1, 1990, or "wheneve[r] the Second Appellate District Court rules, whichever comes later."

The appellate court ruling in favor of the Lossmans was issued late in July 1990, reversing the trial court without remand. The court later denied reconsideration of its ruling, and the Calvary Temple Assembly of God Church petitioned for leave to appeal to the Illinois Supreme Court. In a letter dated November 28, 1990, Zagoras informed the Lossmans that the note and mortgage for $11,938.30 was now due. He further noted that he had been promised a $10,000 bonus in the event he won the appeal; but because the supreme court had not ruled on the petition, the bonus was not yet due.

On December 20, 1990, following the supreme court's dismissal of the appeal, Zagoras again wrote to the Lossmans. He advised them that he had rewritten the note and mortgage and increased the interest rate to 12%, and told them that he would cancel the old note once they signed the revised note and mortgage.

On January 8, 1991, the Lossmans executed a new note and mortgage in the amount of $22,631.71, dated back to December 1, 1990. The note was made payable on December 1, 1991. Zagoras testified at trial that he calculated the new amount by adding the $10,000 bonus to the previous note amount of $11,938.30, plus interest from October 2, 1989, to December 1, 1990. Upon the signing of the new documents, Zagoras marked the old note "CANCELLED" and returned it to the Lossmans.

On May 26, 1992, Sarah Vivian Lossman, plaintiff herein and a co-owner of the property, filed a complaint for partition of the property. Zagoras, Harvey, and Edward were all named defendants, as well as Eugene Lossman, another co-owner of the property.

On July 20, 1992, Zagoras filed an answer and counterclaim in the nature of a cross-claim against Harvey and Edward. Count I of the counterclaim sought to recover $1,406.25 in fees for 11.25 hours of post-appeal services performed between November 15, 1990, and June 25, 1991. Count II of the counterclaim sought to foreclose on the December mortgage.

On April 25, 1994, following a bench trial, the court rejected Zagoras' claim for $4,338.30 in trial fees, citing his failure to detail adequately the services performed to support his claim. The court further stated that "the agreements regarding the increased interest rate on the New Note and the $10,000 bonus were made after the fi-

duciary relationship between [Zagoras] and [the Lossmans] had been established" and, as such, they required a showing of clear and convincing evidence to overcome the presumption of undue influence. Finding that Zagoras did not advise his clients to seek independent counsel prior to signing the new note, that he failed to disclose all relevant information affecting the new note, such as the reasoning for the increased rate of interest, and that the new note was not supported by adequate consideration, the court concluded that Zagoras failed to rebut the presumption of undue influence. The court thus found that Zagoras was not entitled to the 12% interest rate specified in the new note. The court also rejected Zagoras' claim for the $10,000 bonus, but on the ground that "the record [did] not contain facts that the bonus agreement was supported by adequate consideration since the parties had previously agreed that the $7,600 [in appeal fees] would cover the expenses and costs of appeal." Moreover, the court allowed the $7,600 in appeal fees at a rate of 5% interest as supported by adequate consideration. The April 25 order did not address Zagoras' claim for post-appeal fees.

Both parties filed post-trial motions challenging the trial court's order. On August 24, 1994, the court reaffirmed its April 25, 1994, order in all respects, and expressly denied the claim for additional fees. The court further directed Zagoras to prepare a release of his mortgage on the property. Both parties timely appealed the court's order; on this court's own motion, the appeals were consolidated.

We first address whether the trial court erred in finding that Zagoras failed to prove his claim for $4,338.30 in trial fees. Although the record contains a statement from Zagoras to the Lossmans listing the services performed and attributing a total of 82.50 hours spent, the statement does not indicate the time spent on each item or otherwise break down the charges. Zagoras argues, however, that he was absolved of any duty to introduce evidence as to his fees due to the Lossmans' judicial admissions.

The burden of proving the reasonable value of the services performed clearly rests with the attorney, who is required to submit evidence to the trial court from which it can make a reasoned decision in accordance with applicable law. (*In re Marriage of Malec* (1990), 205 Ill. App. 3d 273, 290.) Even so, a fact admitted in a pleading constitutes a judicial admission, making it unnecessary for the opposing party to introduce evidence in support thereof. (*DiBenedetto v. County of Du Page* (1986), 141 Ill. App. 3d 675, 681.) The judicial admission is conclusive upon the party who made it, and as such may not be later controverted at trial or on appeal. *Sohaey v. Van Cura* (1992), 240 Ill. App. 3d 266, 280-81.

Here, in his count to foreclose the December mortgage, Zagoras averred that the amount of original indebtedness was $22,631.71. In their verified answer, the Lossmans denied the $22,631.71 figure, but "state[d] the fact to be that the correct amount of the original indebtedness [was] $11,698.30, and that as to any sum in excess thereof there was a lack of any good and valuable consideration." Further, at trial, Harvey testified that the amount due and owing to Zagoras was $11,610. Edward testified on adverse examination that "the original amount," which he felt was currently due and owing, was "11,900 and some dollars."

■ As discussed earlier, the December mortgage represented the addition of the $10,000 bonus plus accrued interest at 5% to the note and mortgage of October 2, 1989, which included both trial fees and fees on appeal. It is apparent from the record that, although the Lossmans denied owing Zagoras the bonus or the interest, their verified answer did admit an indebtedness of $11,698.30. Deducting the uncontroverted amount of $7,600 in appeal fees and costs from the admitted total indebtedness, the Lossmans have admitted owing Zagoras an additional $4,098.30. The Lossmans' answer thus constituted a binding judicial admission which relieved Zagoras of his burden to produce evidence as to the amount of his trial fees, rendering the trial court's failure to award him those fees for lack of proof against the manifest weight of the evidence. Accordingly, we reverse the portion of the trial court's order denying Zagoras his trial fees and direct the trial court upon remand to enter an additional judgment in favor of Zagoras and against the Lossmans for trial fees in the amount of $4,098.30.

■ Next, we consider whether the trial court erred in denying recovery of the $10,000 bonus. Although the court stated that "the agreements regarding the increased interest rates on the New Note and the $10,000 bonus were made after the fiduciary relationship between [counter]plaintiff and [counter]defendants had been established," it did not decide the bonus issue on this ground. Instead, the court found that since the parties had "previously" agreed that the $7,600 would cover the expenses and costs of appeal, the $10,000 bonus was thus without adequate consideration.

We find that the trial court's determination was against the manifest weight of the evidence. The record demonstrates that the $10,000 bonus was part of the fee arrangement reached on October 2, 1989, in which the Lossmans also agreed to the $7,600 flat fee. Harvey testified that Zagoras first asked him about the bonus "before the appeal was started," before he left Zagoras' office, and that he agreed to pay it. Similarly, Edward testified that the issue of the bonus was

raised in October 1989. Both signed the letter of October 2, 1989, in which they agreed to pay the $10,000 bonus in the event Zagoras won the appeal. Thus, the parties entered into a single agreement in which Zagoras promised to undertake the appeal in exchange for the Lossmans' promise to pay $17,600 if the appeal was successful, and $7,600 if it was not. The October 2 letter plainly indicated that the bonus had not yet been included in the note and mortgage, but would be added if the appeal was won. The bonus was not, as suggested by the trial court, a post-appeal addition to a previous agreement for fees and therefore without consideration. (See *Miller v. Solomon* (1964), 49 Ill. App. 2d 156.) Rather, the bonus was part of the fee agreement reached October 2, 1989, which ultimately formed the basis for the December mortgage.

The question then becomes whether Zagoras exercised undue influence: first, in reaching the October 2 agreement as to the amount of the fees, and second, in procuring the December note and mortgage to secure those fees. It is well settled that a fiduciary relationship exists as a matter of law between an attorney and client, and all transactions between them are subject to the closest scrutiny. (*In re Marriage of Pagano* (1992), 154 Ill. 2d 174, 185.) Particular attention is given to contracts made or changed after an attorney-client relationship has been established. (*Anderson v. Sconza* (1989), 179 Ill. App. 3d 202, 206.) Where an attorney engages in a transaction with a client and is benefitted thereby, a presumption arises that the transaction was the product of undue influence. (*Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 386.) An attorney fee contract entered into after the attorney has been retained requires a showing of clear and convincing evidence in order to rebut the presumption of undue influence. *Pagano*, 154 Ill. 2d at 185.

Zagoras argues here the presumption is inapplicable as to the October agreement, in that judgment had been entered and the parties had not yet agreed to the appeal fee. His contention is that until the parties reached the fee agreement on October 2, his representation of the Lossmans extended only to the trial and ended with his filing of the notice of appeal on September 29 or September 30, 1989. He concludes, therefore, that he was not in a fiduciary relationship with the Lossmans at the time the fee arrangement was reached.

We find no merit to this argument. Although Zagoras claims that he did not consider himself the Lossmans' attorney on October 1 or October 2, prior to the signing of the note and mortgage—despite his admission that he was acting as the Lossmans' attorney through the filing of the notice of appeal—nothing in the record indicates that he so informed the Lossmans or that the Lossmans considered terminat-

ing his representation after trial. Further, he admitted that the Lossmans did not at any time tell him that they had discharged him. We do not believe, under these circumstances, that the fiduciary relationship between Zagoras and the Lossmans, along with the special trust and confidence arising out of the attorney-client relation, was somehow suspended for the two days pending the agreement for fees on appeal. We conclude that Zagoras stood in a fiduciary relationship with the Lossmans at the time the October 2, 1989, fee arrangement was reached, triggering the presumption of undue influence. Moreover, because the attorney-client relation also existed at the time of the execution of the December note and mortgage, they are likewise subject to the presumption.

■ Turning to whether the presumption of undue influence has been overcome, we must consider all factors bearing on the fairness of the transaction. (*Pagano*, 154 Ill. 2d at 186.) The factors to which courts have looked include whether: (1) the attorney made a full and frank disclosure of all relevant information; (2) the client's agreement was based on adequate consideration; (3) the client had independent advice before completing the transaction; (4) the agreement was offered by the lawyer with unquestionable good faith and with complete disclosure; and (5) the client entered into the agreement with a full understanding of all facts and their legal importance. (See *Pagano*, 154 Ill. 2d at 186.) When a presumption has been attacked by the introduction of contrary evidence, the question of whether the presumption has been overcome is one of law, requiring no deference to the trial court on review. (*In re Marriage of Smith* (1994), 265 Ill. App. 3d 249, 254-55.) Once an attorney presents sufficient evidence in rebuttal, the presumption ceases to have operative effect, leaving for the trier of fact the question of whether undue influence actually existed. See *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 460-66.

■ Upon a careful review of the record, we find that Zagoras satisfied his burden of persuasion regarding the October agreement as to the fee amount, but that he failed to overcome the presumption as it applied to the execution of the December note and mortgage. At trial, Zagoras testified that the Lossmans first informed him of their inability to pay any more on his trial fees at the time the appeal bond was signed, approximately one week before the October 2 meeting. He testified further that at the meeting, he told them that he had expected to get paid. When the Lossmans reiterated that they could not pay him, he told them that, in order to stay on the case, he wanted a bonus "since [he] wasn't going to be paid anymore [*sic*] for a

long time." Although Harvey claimed that he did not think that the bonus was fair, and Edward testified that "[i]t didn't appear that [he] had any other choice" but to pay the bonus, both men conceded that they did not communicate any intention not to pay the bonus to Zagoras. It is clear that they understood the nature of the bonus; as Harvey testified, "[Zagoras] was going to get the seventy-six hundred either way, but if he won, the bonus." We believe that the Lossmans were capable of understanding and entering into the fee arrangement in question, and that the agreement as to the amount of the fees—both the $7,600 flat fee and the $10,000 bonus—was fair. Accordingly, we find that Zagoras has rebutted the presumption of undue influence as to the October 2 fee agreement.

The same cannot be said, however, of the December note and mortgage used to secure the fees. Unlike an agreement for a flat fee, the significance of the signing of a note with interest and the encumbrance of real estate is not so readily understood by an uncounseled layperson. Indeed, Edward testified that he thought Zagoras "was doing that—*** the liens, the mortgage, or whatever it was just to protect and solve [sic] [the property] in case one of [them] passed away or something." Further, the court found, contrary to Zagoras' testimony, that he failed to advise the Lossmans to seek independent counsel prior to signing the December note, and failed to disclose all relevant information affecting the note, such as the reasoning for the increased interest rate. Under the circumstances presented here, we find that Zagoras has failed to present clear and convincing evidence so as to rebut the presumption of undue influence as to the December note and mortgage, and hold them both to be invalid. We therefore affirm the portion of the trial court's order of August 24, 1994, ordering Zagoras to prepare a release of his mortgage on the Lossmans' property, and affirm the court's denial of Zagoras' claim of 12% interest on the December note.

For the same reason, we reverse the trial court's award of 5% interest. As with the December note and mortgage, the execution of the (now-cancelled) October note and mortgage was an extraordinary measure used by Zagoras to secure his fees. The trial court also noted that Zagoras failed to explain to the Lossmans the reason for the 5% interest, or to advise them to get independent counsel prior to signing the October note and mortgage. Because Zagoras has failed to rebut the presumption of undue influence as it relates to the Lossmans' agreement, as reflected in the October note, to pay 5% interest on the fees, the court's award of interest is reversed.

Having determined that Zagoras rebutted the presumption of

undue influence as it related to the October 2 fee arrangement, we turn to whether undue influence in fact existed in the parties' agreement. This question, as noted above, is one for the trier of fact. (See *Dean*, 95 Ill. 2d at 466.) Here, in awarding the $7,600 in fees on appeal, the trial court impliedly determined that no undue influence existed as to that fee agreement, a determination that was not against the manifest weight of the evidence. Further, as the $10,000 bonus was part of the same agreement as the $7,600, we find that this determination extended to the bonus as well. Accordingly, we affirm the court's award of the $7,600 in appeal fees, reverse the denial of the $10,000 bonus, and direct the trial court upon remand to enter an additional judgment in favor of Zagoras and against the Lossmans in the amount of $10,000.

■ Finally, we consider whether the trial court erred in denying Zagoras his claim for $1,406.25 in post-appeal fees for the period between November 15, 1990, and August 6, 1991. The services were detailed in the time slips introduced at trial, and billed at Zagoras' trial fee rate of $125 per hour for 12.75 hours of work. Included in the services performed was the preparation of an agreement to forbear, which Zagoras testified he prepared in order to prevent Vivian from filing the instant partition suit. He testified that although the Lossmans did not know what the agreement to forbear was called, they "wanted something to get Vivian to stop threatening their lawsuit." Zagoras admitted, however, that he never billed the Lossmans for these services. Moreover, at trial, Harvey testified that he was unaware of any work performed by Zagoras in connection with avoiding the partition suit. He also testified that although he had seen the agreement to forbear, he did not recall whether the agreement was prepared at his direction. Because we cannot say, on this record, that the trial court's determination was against the manifest weight of the evidence, we affirm the portion of the August 24, 1994, order denying Zagoras' claim for post-appeal fees.

In sum, we reverse the denial of trial fees and direct the trial court to enter an additional judgment in favor of Zagoras in the amount of $4,098.30; we reverse the denial of the $10,000 bonus and direct the trial court to enter an additional judgment in favor of Zagoras in that amount; we affirm the award of $7,600 in appeal fees, but reverse the award of 5% interest on those fees; we affirm the portion of the order directing Zagoras to prepare a release of his mortgage on the Lossmans' property, and affirm the denial of 12% interest on the December note; and we affirm the denial of Zagoras' post-appeal fees.

The judgment of the circuit court of Lake County is thus affirmed

in part and reversed in part, and the cause remanded to the trial court for the entry of additional judgments as set forth herein.

Affirmed in part; reversed in part and remanded with directions.

INGLIS and RATHJE, JJ., concur.