In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 12-3466

PATRICK J. HALPERIN,

*Plaintiff-Appellant,*

*v.*

THOMAS C. HALPERIN,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 4104 — **Matthew F. Kennelly**, *Judge*.

———————————

ARGUED APRIL 3, 2014 — DECIDED APRIL 24, 2014

———————————

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This is a diversity suit for fraud
(the governing substantive law being that of Illinois) arising
out of a falling-out between two brothers, Patrick and Thomas Halperin. Each owned one-third of the common stock of
Commercial Light Company. A third brother, Daniel, owned
the other third; he is not a party to the suit.

Commercial Light was a substantial family-owned electrical contractor, founded by the brothers' grandfather, that has installed major lighting systems in Chicago, such as the lighting systems of the John Hancock Center and Wrigley Field. The company still exists but is no longer owned by the family, having been sold in 2008.

Between 1982 and the sale of the company, Thomas Halperin was the CEO, board chairman, and president. His principal subordinates were the company's treasurer, Michael Sorden, and its executive vice-president, Scott Morris. (We'll refer to Halperin, Sorden, and Morris as "the officers.") The board of directors had only two members: Thomas and a lawyer who provided legal services to the company. Patrick and Daniel had their own careers, and took no part in the company's management.

The suit charges that when Morris became executive vice-president in 1992, he, with Thomas's approval, started jacking up the salaries and bonuses paid to himself, Sorden, and Thomas. As a result, the compensation of the three officers soared, totaling $22 million between 1993 and 2000. Here is the year by year and total compensation of the three, both separately and collectively:

|  | Thomas Halperin | Scott Morris | Michael Sorden | Total |
|---|---|---|---|---|
| 4/1/93 – 3/31/94 | $330,471 | $256,051 | $166,398 | $752,920 |
| 4/1/94 – 3/31/95 | $322,025 | $316,992 | $189,379 | $828,396 |

|                      | Thomas Halperin | Scott Morris | Michael Sorden | Total        |
|----------------------|-----------------|--------------|----------------|--------------|
| 4/1/95 – 3/31/96     | $306,031        | $219,529     | $199,836       | $725,396     |
| 4/1/96 – 3/31/97     | $917,001        | $1,577,417   | $697,740       | $3,192,158   |
| 4/1/97 – 3/31/98     | $1,247,249      | $655,367     | $344,384       | $2,247,000   |
| 4/1/98 – 3/31/99     | $738,908        | $1,137,944   | $547,259       | $2,424,111   |
| 4/1/99 – 3/31/00     | $1,042,585      | $718,726     | $364,284       | $2,125,595   |
| 4/1/00 – 3/31/01     | $3,593,270      | $4,317,178   | $1,892,982     | $9,803,430   |
| Total (8 years)      | $8,497,540      | $9,199,204   | $4,402,262     | $22,099,006  |

The suit charges that the company fraudulently represented to Patrick and Daniel that the executives' compensation was approved by the board of directors, when in fact the lawyer who was the only member of the board besides Thomas rubber-stamped Thomas's compensation decisions. The only information about compensation that Thomas disclosed to his brothers was a line in the company's annual financial statement that listed total executive compensation; there was no indication of how much each executive had received or even how many executives there were. The suit also accuses Thomas of having disobeyed the firm's audi-

tors, who had told him that he had a duty to inform Patrick of the compensation that the company was paying Thomas.

The suit claims that the payment of excessive compensation, and the concealment from Patrick, a shareholder, of the amount of compensation received by the three officers, were breaches of the fiduciary obligation that under Illinois law Thomas, as the company's board chairman and CEO, owed to Patrick and Daniel, the other two shareholders of this closely held corporation. *Kovac v. Barron*, 2014 WL 897041, at *11 (Ill. App. March 7, 2014); *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218–19 (7th Cir. 1995) (Illinois law); see also *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 328 N.E.2d 505, 515 (Mass. 1975); *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, C.J.); Frank H. Easterbrook & Daniel R. Fischel, "Close Corporations and Agency Costs," 38 *Stanford L. Rev.* 271, 278, 291 (1986). True, much of the excess went not to Thomas but to Morris and Sorden—indeed in several years Morris's compensation exceeded Thomas's. But any excessive compensation, however distributed among the recipients, that was enabled by a breach of fiduciary duty by Thomas deprived Patrick of compensation that he might have received as a one-third owner.

The evidence that the compensation of the three officers was excessive is somewhat scanty. It seems possible that the excessive-seeming compensation was either reasonable in light of the contributions that the officers made to the profitability of the company, or was, as in many closely held companies, a substitute for dividends. The shareholder-managers of such companies often prefer salaries to dividends to avoid double taxation: "a dollar of net income returned to the owner as a dividend is taxed twice, first as in-

come to the corporation and again as income to the individual. To minimize the pain of double taxation, corporations … rationally find ways to provide returns for their owners in the form of compensation and perquisites." *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 471 (Del. Ch. 2011).

But the jury didn't have to find that the compensation was excessive in order to find a breach of fiduciary duty. The shenanigans noted earlier whereby Thomas concealed from Patrick the largesse that Thomas was awarding himself and the two officers was a breach of his fiduciary duty to his brothers as shareholders. And while it might seem that, even so, there would be no damages unless the largesse were excessive, Illinois allows as a remedy for breach of fiduciary duty a forfeiture to the victim of the breach (Patrick) of all the fiduciary's earnings during the period of breach. *In re Marriage of Pagano*, 607 N.E.2d 1242, 1249–50 (Ill. 1992); *Levy v. Markal Sales Corp.*, 643 N.E.2d 1206, 1219–20 (Ill. App. 1994); *Gross v. Town of Cicero*, 619 F.3d 697, 712 (7th Cir. 2010) (Illinois law). (The third brother, Daniel, was a victim too, but as we said he is not a party.)

We needn't burrow deeper into the merits of Patrick's claim; for while the jury agreed that Thomas had breached a fiduciary duty to Patrick, its verdict was for Thomas, because it accepted his defense that Patrick had waited too long to sue. The applicable Illinois statute of limitations is five years. 735 ILCS 5/13-205; see *Armstrong v. Guigler*, 673 N.E.2d 290, 296–97 (Ill. 1996); *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1336–37 (7th Cir. 1992) (Illinois law). Patrick had sold all his stock in Commercial Light Company in 2000, after which Thomas had no fiduciary duty to him. But Patrick didn't file suit until 2010, more

than five years after Thomas's alleged breach of his fiduciary duty had ended. Patrick claims, however, not to have discovered the breach until 2008, and he filed suit only two years after that.

The statute of limitations does not begin to run until the wronged "person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981). This is a version of the well known "discovery rule" of when a statute of limitations begins to run.

Thomas presented evidence that Patrick, a former CEO with two doctoral degrees, should have discovered the fraud more than five years before 2010. Maybe so; but there is more to the statute of limitations than the discovery rule. The more is that "if a person liable to an action fraudulently conceals the cause of such action," the statute of limitations doesn't begin to run until the plaintiff "discovers that he or she has such cause of action." 735 ILCS 5/13-215. And if the defendant is a fiduciary of the plaintiff, as Thomas was of Patrick, then even "mere silence on [the defendant's] part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment." *Chicago Park District v. Kenroy, Inc.*, 402 N.E.2d 181, 185 (Ill. 1980); see also *DeLuna v. Burciaga*, 857 N.E.2d 229, 246 (Ill. 2006).

Because the applicability of the statute of limitations turned on contested facts in this case, the issue was properly submitted to the jury, *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1159–60 (7th Cir. 2012); *Aebischer v. Stryker Corp.*,

535 F.3d 732, 734 (7th Cir. 2008); *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992); *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1484 (D.C. Cir. 1989); cf. *Witherell v. Weimer*, *supra*, 421 N.E.2d at 874—and the jury determined that the suit was indeed time-barred. Patrick argues that the jury based that determination on an incorrect instruction given by the judge: that the five-year statute of limitations would not run "during any period in which Patrick proves by a preponderance of the evidence that Thomas concealed his wrongdoing from Patrick. Under the law, Thomas owed Patrick, as a Commercial Light stockholder, a fiduciary duty to disclose material facts concerning the operation and management of Commercial Light. For this reason, any failure by Thomas to disclose facts that he was under a duty to disclose amounts to concealment. In this regard, Patrick was not required to scrutinize Thomas for misconduct, unless there was a prior indication of wrongdoing."

Patrick objects to the sentence: "Thomas owed Patrick, as a Commercial Light stockholder, a fiduciary duty to disclose material facts concerning the operation and management of Commercial Light." Patrick wanted (but the judge refused) to substitute the following: "Thomas was required to disclose all material facts concerning the extent of Patrick's claim against him." Patrick defends his proposed but rejected substitute instruction primarily on *Wisniewski v. Diocese of Belleville*, 943 N.E.2d 43 (Ill. App. 2011), a case involving alleged concealment by a Catholic diocese of sexual abuse by a priest, where an instruction very similar to the one that Patrick wanted the judge to substitute in this case was indeed given. The instruction, which required the defendant "to disclose all material facts concerning the existence of plaintiff's cause of action against the defendant,"

was held on appeal to have been proper. For remember the "mere silence" language of *Chicago Park District v. Kenroy*, *supra*. A fiduciary has a duty to inform his beneficiary of facts material to the fiduciary relationship, such as, in the case of a trustee, the amount of money held in the trust. A failure to comply with the duty to inform that prevents the beneficiary from learning something the fiduciary is duty-bound to communicate to him (such as that the fiduciary is stealing from him!) is concealment, and is fraudulent because it is taking advantage of the beneficiary's dependence on the fiduciary.

The duty of disclosure is of course limited to facts material to the alleged breach of fiduciary duty. Thomas was not required to give his brothers a running commentary on his personal life. The only facts material to the breach were facts relating to the operation and management of Commercial Light Company. Thomas and his two principal subordinates *were* the management of Commercial Light Company, and controlled the company's operation, so his concealment of the officers' compensation from the other shareholders was a breach of a fiduciary duty that he owed them.

But this means that the judge's instruction and Patrick's proposed instruction were substantively the same. The only real difference was that Patrick's—"Thomas was required to disclose all material facts concerning the extent of Patrick's claim against him"—was confusing, because of the ambiguity of the word "claim." Did that word in context mean his suit, and did "extent" refer to the size of the claim, which Thomas could hardly be expected to know until the suit was filed? What Patrick's lawyer seems to have been trying to say in the proposed instruction was not that Thomas should

be credited with prevision, but that he should have disclosed to Patrick during the fraud period all facts relating to the compensation of Thomas and the other two senior officers that Patrick as a shareholder was entitled to know. After all, Patrick and the third brother, Daniel, between them owning two-thirds of the company's stock, could have fired Thomas if they thought he was being greedy. Patrick's proposed instruction did not refer to the management or operation of the company, however—but the judge's did, and so gave Patrick's lawyer all the room he needed to be able to argue to the jury that the three officers' compensation was a material fact concerning the operation and management of the company. In arguing that Patrick's claim had been timely, the lawyer pointed out that Thomas hadn't disclosed the *individual* compensation amounts to Patrick until 2008.

The jury rejected the argument, in all likelihood determining that Patrick should have discovered the breach of fiduciary duty (remember that the jury determined that there *was* a breach) and sued by 2005 (really should have discovered it much earlier, since Patrick claims that the breach began in 1993). He had received the company's annual financial reports throughout the entire period, and they disclosed not only total executive compensation (that is, including but not limited to the compensation paid the three officers), but also total revenue and operating expenses and net profit. The financial statement for 1997, for example, showed executive compensation of more than $3.5 million—almost 40 percent of the $9.1 million in total operating expenditures of the company—which seems high for a company that reported net income of only $365,000 on total revenue that year of $31 million. Highly educated and with business experience, Patrick knows what a board of directors is.

He could have demanded copies of the minutes of the directors' meetings. The meetings themselves were a farce, but the minutes contain a good deal of financial information—including detailed compensation figures for Thomas and the other executives.

But if as we're surmising the jury just thought that Patrick should have discovered Thomas's breach of fiduciary duty within the five-year limitations period, and that was the basis of the jury's verdict, the verdict was wrong. "Should have discovered" is what starts the statute of limitations running; fraudulent concealment stops it—and a fiduciary's silence regarding facts material to a breach of fiduciary duty is a form of fraudulent concealment. But the appeal challenges not the verdict's correctness but only the refusal to substitute Patrick's instruction for the judge's instruction. And that was not an error. The judgment is therefore affirmed.